965 A.2d 141

MAHMOUD AGHA, PLAINTIFF–APPELLANT, v. VALERIE M. FEINER AND BARBARA A. DELILLO, DEFENDANTS–RESPONDENTS, AND LAURA SABAGH, JAMIL SABAGH, "JANE DOE", "ABC COMPANY", "MARY BO" AND "XYZ COMPANY" (ALL BEING FICTITIOUS DESIGNATIONS), DEFENDANTS.

Argued December 2, 2008—Decided February 26, 2009.

*Matthew J. O'Brien* and *Edward P. Capozzi* argued the cause for appellant (*Jaloudi & Jaloudi*, attorneys).

*Charles E. Powers, Jr.*, argued the cause for respondents (*Harwood Lloyd*, attorneys; *Mr. Powers* and *Eileen P. Kuzma*, on the brief).

*Gerald H. Baker* argued the cause for amicus curiae Association of Trial Lawyers of America–New Jersey (*Lawrence M. Simon*, attorney).

*Peggy Sheahan Knee*, President, submitted a brief on behalf of amicus curiae New Jersey State Bar Association (*Ms. Sheahan Knee*, attorney; *Amirali Y. Haidri, Eric G. Kahn* and *Daniel E. Rosner*, on the brief).

Justice LONG delivered the opinion of the Court.

At issue in this Automobile Insurance Cost Reduction Act (AICRA) case is the substantive admissibility of an MRI[1] report prepared by a non-testifying radiologist and relied on by plaintiff's testifying physicians. One of the testifying physicians, a chiropractor, acknowledged that he was not qualified to interpret an MRI, and the other, an anesthesiologist, although capable, did not, in fact, review the MRI films. Over defendants' objections, both witnesses were permitted, based on the MRI report, to testify that plaintiff suffered a disc herniation, which was the only objective evidence of permanency. Defendants' requests for a limiting

---

[1] MRI is the acronym for "magnetic resonance imaging," which is defined as "[t]he use of a nuclear magnetic resonance spectrometer to produce electronic images of specific molecular structures in solids, esp[ecially] in human tissues." *Webster's II New College Dictionary* 674 (3d ed. 2005).

instruction under *N.J.R.E.* 105 were denied, as was their motion to dismiss, based on plaintiff's failure to satisfy the permanency threshold of AICRA. A verdict in favor of plaintiff ultimately issued.

Defendants appealed and the Appellate Division reversed, reasoning that plaintiff had "bootstrapped" the contested MRI report findings into evidence through the testimony of the treating physicians in violation of established law.

We agree with the Appellate Division that, over a defense objection, the testifying physicians could not establish the substance of the contested MRI and that only an expert qualified to interpret an MRI could do so. We part company from the panel, however, in connection with its dismissal of the action. Ordinarily a dismissal would be required in an AICRA case where, as here, no objective evidence of permanency was adduced. However, because the trial judge's rulings had the effect of lulling plaintiff into believing that the production of the radiologist who prepared the report was unnecessary, a new trial is required.

I.

Plaintiff, Mahmoud Agha, was injured on September 1, 2003, when the stopped car in which he was a passenger was struck by a vehicle owned by defendant Barbara A. Delillo and driven by defendant Valerie M. Feiner. The automobile in which plaintiff was traveling was driven by his wife, Laura Sabagh, and owned by Jamil Sabagh. Plaintiff instituted a negligence action against Feiner, Delillo, and the Sabaghs.[2] Feiner and Delillo (defendants) conceded responsibility for the accident but contended that the accident did not cause plaintiff's injuries and that, in any event, those injuries did not satisfy the AICRA threshold because they were not permanent.

---

[2] His claims against the Sabaghs were dismissed on summary judgment.

Laura Sabagh also instituted a negligence action against Feiner and Delillo. Sabagh's claims were consolidated with plaintiff's for trial.

A trial ensued. In support of plaintiff's claims that he suffered a permanent injury to his back, he testified that he had never had a prior accident or back injury before the Feiner crash and further testified to the pain, suffering, and limitations imposed on his daily life as a result of the accident. He also produced Dr. Thomas Ragukonis, an anesthesiologist specializing in pain management, and Dr. Adam Awari, a chiropractor, as witnesses. Plaintiff's pre-trial witness list further indicated that Dr. Default, the author of an MRI report, would testify.

Dr. Ragukonis testified that as part of his initial examination of plaintiff, he reviewed: x-ray reports of the lumbar spine and chest; MRI reports of the cervical and lumbar spine; a neurological consultation report, which included an electromyography (EMG); and an evaluation summary from Dr. Awari. When plaintiff's counsel asked Dr. Ragukonis for the results of the MRI, defense counsel objected and requested a limiting instruction regarding the substance of the MRI report:

MR. POWERS: I want a limiting instruction, he didn't review the MRIs, he says so in his report therefore this—

MR. [CAPOZZI]: I looked at the MRI film, I made an MRI report.

MR. POWERS: The MRI report is not admissible to prove ... his herniated [disc] . . . , and it can only be used by this doctor as he forms his basis for his opinion to the jury and should be instructed on that basis. In other words, it's not substantive proof ... and it's only relevant and it's only admissible to the extent that it forms the basis for his opinion.

THE COURT: But if it's of the type reasonably relied upon by experts in the particular field in formulating opinion on the subject matter, the fact that it's inadmissible in evidence or is hearsay, [it] still can be used.

MR. POWERS: I respectfully disagree.

THE COURT: New Jersey Rule of Evidence, 703.

MR. POWERS: But I'm entitled to a [limiting] instruction that it's not substantive evidence on the fact that he has a herniated [disc].

THE COURT: Respectfully, Mr. Powers, New Jersey Rule of Evidence 703. Let me finish. In a particular case upon which an expert bases an opinion or inference[ ] may be those perceived by or made known to the expert at or before a

hearing. If [of a] type reasonably relied upon by experts in [the] particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

MR. POWERS: And I agree. And I agree.

THE COURT: I thought you said you disagree.

MR. POWERS: No, I agree that it's not admissible in evidence and that you give a limiting instruction that the fact there is an MRI report ... is not substantive evidence of the [fact] that there is a herniated [disc] and is only admissible as it forms a basis for his opinion. That's the difference. It's not admissible.

... It's admissible for purposes of supporting his opinion only, not ... independent substantive proof of a herniated [disc] and I'm entitled to that instruction.

THE COURT: Anything else?

MR. POWERS: No.

THE COURT: I'm going to tell the jurors that the doctor's opinion [that] he relied upon forms a basis for his opinion. Can you tell me what particular limiting instruction you want me to give the jury?

MR. POWERS: Yes. Ladies and gentlemen, you [heard] this doctor testify that he received an MRI report from the [radiologist] that read it. That MRI report reported that there was a [disc] herniation at L5 and S1. I advise you that that information is not admissible as substantive proof of the existence of a herniated [disc] at L5–S1, but it's only admissible and may only be considered by you [insofar] as it supports the conclusion or opinion.

THE COURT: Mr. [Capozzi]?

MR. [CAPOZZI]: He relies on MRI reports all the time. The person who read that MRI report is a radiologist, I mean I can just—if you have to give the limiting instruction we feel that it suggests—I'll make it so they know where he got that opinion and whose opinion it was and that he relies on radiologists all the time. Therefore, would he have any basis for not believing [that] herniation. He's basing his treatment on that document and I have [had] doctors [testify] to that in every court I've been in.

THE COURT: Mr. Powers, most respectfully, I decline to give that limiting instruction that you requested. Thank you, gentlemen.

Dr. Ragukonis went on to testify before the jury that the MRI, as read by Dr. Default, revealed that plaintiff had a herniated disc at L5–S1. Dr. Ragukonis noted that he relied on radiologists' readings of MRI films, and concluded that plaintiff's herniated disc was "causally related to the accident" and was a permanent injury.

On cross-examination, defendants elicited from Dr. Ragukonis that he did not, in fact, review the MRI films himself, although he is capable of doing so. In addition, although he had initially testified that his physical exam of Agha was objective, Dr. Ragu-

konis acknowledged on cross-examination that his exam was sub-
jective "[i]nsofar as [the patient is] recording it."

Dr. Awari testified that Dr. Default's report established hernia-
tion and that such a herniation is a permanent injury. On cross-
examination, Dr. Awari acknowledged that he cannot read MRI
films. As in the case of Dr. Ragukonis, defense counsel objected
and sought an instruction regarding the limited use to which an
out-of-court expert report may be used by the jury:

> This can't come in as substantive evidence and the jury is not going to understand
> that this [is not] substantive evidence because he's reading right from a report.
> But it can't be [led] to believe that this is a proof of a [herniated disc]. It's the
> proof of the case, it's the only issue in this case.
>
> . . .
>
> . . . [A limiting] instruction must be given, since the law is clear that this is not
> substantive proof of the fact of a herniated [disc]. It's admissible for some purpose
> as it corroborates his opinion, but not for proof of herniation. That's why I want
> the limiting instruction.

At that point, plaintiff's attorney offered to resolve the problem
by calling Dr. Default, who had been on the pre-trial witness list
and was available to testify. In an exchange with defense counsel,
plaintiff's attorney asked, "If I bring in the radiologist, then you
will be fine with it?" Defense counsel responded, "I'm not saying
I will be fine with it or not." In any event, the issue was resolved,
because the judge again declined to give a limiting instruction.
Without that instruction, the jury was left with testimony regard-
ing the substantive results of the MRI.

At the conclusion of plaintiff's case, defense counsel reiterated
his concerns regarding the MRI testimony and moved to dismiss
pursuant to *Rule* 4:37–2(b), arguing that the only evidence plaintiff
provided of his alleged disc herniation was the MRI report, which
was admissible only to support the opinions of Drs. Ragukonis and
Awari and not as independent proof of that critical fact in dispute:

> With respect to both plaintiffs, Your Honor, the only proof of an alleged [disc]
> herniation is an MRI report which is not independently admissible and can't be
> admitted for the purpose[ ] to show that there was, in fact, a herniated [disc]. It
> only was admissible for purposes of supporting the opinion. But since it's not
> independently admissible, there is no objective proof of a herniated [disc] in either

of these two cases and thus there is no objective medical evidence of a permanent injury.

As such, both cases [fail] as a matter of law.

The trial judge denied defendants' motion, declaring that plaintiff's experts "set forth all of the bases of [their] opinion[s] and had indicated that [plaintiff] had sustained a herniated [disc] which [was] permanent and proximately caused by the automobile accident of September 1st, 2003."

After the motion was denied, defendants presented the testimony of two physicians, including a neuroradiologist, to the effect that plaintiff's MRI did not reveal a herniation and that he did not suffer a permanent injury. After deliberations, the jury awarded plaintiff $80,000.[3]

Defendants appealed and the Appellate Division reversed and remanded the case with instructions that judgment be entered in defendants' favor because plaintiff failed to provide any objective medical evidence of a permanent injury. In determining to dismiss the case, the Appellate Division ruled that an MRI report may not be admitted under *N.J.R.E.* 703 without the testimony of a qualified physician, nor may it be admitted under the business records exception to the hearsay rule. After discussing *Brun v. Cardoso*, 390 *N.J.Super.* 409, 421, 915 *A.*2d 1053 (App.Div.2006), in which the Appellate Division had noted that, "on objection, interpretation of an MRI may be made only by a physician qualified to read such films," the panel held that the facts here "presented a classic case of bootstrapping [the] otherwise inadmissible MRI report[ ] into evidence" through the testimony of Drs. Ragukonis and Awari, who either could not or did not read the MRI films.[4]

---

[3] The jury returned a no-cause verdict on Sabagh's claims. She did not appeal.

[4] Although the panel referred at one point to the "need for cross-examination of the doctor who read the MRI," it is clear to us from the balance of the opinion that it was intended to allow testimony by any physician qualified to interpret the films.

The court went on to note that the production of a qualified witness regarding the MRI was particularly important, because the defense expert "was subject[ed] to a thorough, if not blistering, cross-examination" regarding his conclusions, whereas Dr. Default's report was "presented to the jury free from attack." Finally, the panel discussed its reliance on *Brun*, and held that although that case was decided after this trial, it was merely the continuation of prior precedent.

We granted Agha's petition for certification, limited solely to the issue of the appropriate disposition of defendants' motion for an involuntary dismissal. 195 *N.J.* 520, 950 *A.*2d 907 (2008).

## II.

Plaintiff argues that the Appellate Division erred in applying *Brun*, because that case was decided after this trial and because *Brun* was an unanticipated repudiation of well-established jurisprudence and practice under *N.J.R.E.* 703 allowing medical experts to testify about documents that they had reviewed in reaching their opinions. Plaintiff further contends that he is entitled to a new trial because he was prepared to call his radiologist to testify, but was dissuaded from doing so by the incorrect rulings of the trial judge.

Amici curiae, the Association of Trial Lawyers of America–New Jersey ("ATLA–NJ") and the New Jersey State Bar Association ("NJSBA"), argue that: the holdings below and in *Brun* misconstrue *N.J.R.E.* 703; physical examinations that include range-of-motion tests and other observations by a treating physician satisfy the objective clinical evidence standard of AICRA; and, when an expert bases his or her opinion on the report of a radiologist, the failure of that radiologist to testify should go to the weight accorded to the expert's testimony, and not to its admissibility.

Defendants counter that *Brun* was nothing more than a continuation of the long-standing rules governing expert testimony, and that, under those rules, they were entitled to a limiting instruction and ultimately to an involuntary dismissal, because the substance

of the MRI report was not properly before the jury and thus the permanency threshold was not satisfied.

### III.

The "limitation on lawsuit" or "verbal threshold" of AICRA, *N.J.S.A.* 39:6A–8(a), is a cost-containment measure that provides lower premium payments in exchange for a limitation on the insured's right to sue for noneconomic damages. *DiProspero v. Penn,* 183 *N.J.* 477, 480–81, 874 *A.2d* 1039 (2005). The Act restricts suits for such damages unless the victim "sustain[s] a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a *permanent injury* within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a) (emphasis added). The statute provides that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.*

In order to vault the threshold, a physician must certify, under penalty of perjury, *ibid.,* that "the automobile accident victim suffered from a statutorily enumerated injury." *Davidson v. Slater,* 189 *N.J.* 166, 181, 914 *A.2d* 282 (2007). That opinion must be based on "objective clinical evidence," *N.J.S.A.* 39:6A–8(a), a standard that we have held is the equivalent of the "credible, objective medical evidence" standard described in *Oswin v. Shaw,* 129 *N.J.* 290, 314, 609 *A.2d* 415 (1992). *DiProspero, supra,* 183 *N.J.* at 495, 874 *A.2d* 1039. Under that standard, which is a critical element of the cost-containment goals of AICRA, the necessary objective evidence must be "derived from accepted diagnostic tests and cannot be 'dependent entirely upon subjective patient response.'" *Davidson, supra,* 189 *N.J.* at 181, 914 *A.2d* 282 (quoting *N.J.S.A.* 39:6A–8(a)). Thus, subjective tests, such as those that evaluate range of motion, will not suffice. *See id.* at 190, 914 *A.2d* 282 ("All other diagnostic methods performed on plaintiff, including range of motion tests . . ., are not on the list [of

accepted diagnostic procedures] or are otherwise expressly declared to be invalid diagnostic methods." (citing *N.J.S.A.* 39:6A–8(a); *N.J.A.C.* 11:3–4.5)); *see also Polk v. Daconceicao*, 268 *N.J.Super.* 568, 573, 634 *A.*2d 135 (App.Div.1993) ("[M]easurements of limitation of motion alone are insufficient to overcome the verbal threshold imposed by *N.J.S.A.* 39:6A–8a.").

Here, the sole objective clinical evidence that plaintiff was permanently injured was Dr. Default's MRI report of disc herniation. That was what the testifying physicians relied on to establish permanency and was the sole focus of plaintiff's arguments at trial. Although amici suggest that a treating physician's physical findings, based on range-of-motion tests and other observations, would satisfy the objective clinical evidence standard, plaintiff has not advanced that argument.[5]

Thus, if Dr. Default's report substantively was before the jury through the testimony of Drs. Ragukonis and Awari, defendants were not entitled to an AICRA dismissal. If, on the other hand, it was not properly before the jury, as a matter of substance, then plaintiff failed to submit any objective clinical evidence of permanency and did not vault the AICRA threshold.[6]

### IV.

 *N.J.R.E.* 702 provides that:

---

[5] Amici do not cite any cases in support of that assertion, presumably relying on *Oswin, supra,* which states that, "[b]ecause most range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation." 129 *N.J.* at 320, 609 *A.*2d 415. That language, however, was limited by *Oswin's* specific reference to objectively demonstrable conditions such as "swelling, discoloration, and spasm." *Ibid.* It was not intended to transmute a physician's "observations" of a patient's subjective responses into objective clinical evidence.

[6] Obviously, if plaintiff had submitted other objective clinical evidence of permanency, dismissal would not have been required even if Dr. Default's conclusions were barred.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The general requirements applicable to the admissibility of such expert testimony were set forth by this Court in *State v. Kelly*:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [97 *N.J.* 178, 208, 478 *A.*2d 364 (1984).]

In terms of qualifications, an expert "must 'be suitably qualified and possessed of sufficient specialized knowledge to be able to express [an expert opinion] and to explain the basis of that opinion.'" *State v. Moore*, 122 *N.J.* 420, 458–59, 585 *A.*2d 864 (1991) (alteration in original) (quoting *State v. Odom*, 116 *N.J.* 65, 71, 560 *A.*2d 1198 (1989)).

*N.J.R.E.* 703 in turn prescribes:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*N.J.R.E.* 703 was intended to "'allow more latitude in the admission of expert opinion testimony.'" *See Ryan v. KDI Sylvan Pools, Inc.*, 121 *N.J.* 276, 284, 579 *A.*2d 1241 (1990) (quoting *Evid. R.* 56, comment 7) (discussing prior *Evidence Rule* 56(2), which used almost identical language). The language of *N.J.R.E.* 703 is borrowed from *Federal Rule of Evidence* 703, which was designed to "broaden the basis for expert opinions." *Fed.R.Evid.* 703 advisory committee's note. Thus, the testifying expert is generally permitted to detail for the trier of fact all of the materials, including films, test results, hospital records, and other experts' reports, on which he relied in deriving his opinion, so long as they are of a type reasonably relied upon by experts in his field.

The fundamental question here centers on what the jury is empowered to do with that underlying data. Is it limited to using the data solely to evaluate the quality of the testifying physician's

opinion, or can it accept as true the conclusions in the out-of-court reports? Defendants argue for the former and plaintiff, the latter. Specifically, plaintiff contends that, under *N.J.R.E.* 703, the jury could consider Dr. Default's MRI report as having established disc herniation and hence permanency. We disagree.

■ Although the rule permits a hearsay statement, such as a medical report by a non-testifying expert, to be referred to by a testifying expert for the purpose of apprising the jury of the basis for his opinion, it does not allow expert testimony to serve as "a vehicle for the 'wholesale [introduction] of otherwise inadmissible evidence.'" *State v. Vandeweaghe*, 351 *N.J.Super.* 467, 480–81, 799 *A.*2d 1 (App.Div.2002) (alteration in original) (citation omitted), *aff'd*, 177 *N.J.* 229, 827 *A.*2d 1028 (2003). The rule must be "anchored to the reason for its existence," *Krohn v. N.J. Full Ins. Underwriters Ass'n*, 316 *N.J.Super.* 477, 486, 720 *A.*2d 640 (App. Div.1998), *certif. denied*, 158 *N.J.* 74, 726 *A.*2d 937 (1999), and interpreted accordingly. When the purpose of the rule is taken into consideration, the only fair interpretation is that it was not intended as a conduit through which the jury may be provided the results of contested out-of-court expert reports.

■ That is why our court rules provide that where an expert references the report of a non-testifying expert to explain the basis of his or her own opinion, it is incumbent upon the trial judge, upon request, to instruct the jury regarding its limited use. *See N.J.R.E.* 105 ("When evidence is admitted ... for one purpose but is not admissible ... for another purpose, the judge, *upon request*, shall restrict the evidence to its proper scope and shall instruct the jury accordingly ...." (emphasis added));[7] *see also*

---

[7] Even in the absence of a request, the judge should give a limiting instruction *sua sponte* where it is necessary to avoid an unjust result. *Cf. State v. Cofield*, 127 *N.J.* 328, 605 *A.*2d 230 (1992) (court must instruct jury on limited use of other-crime evidence); *State v. Lair*, 62 *N.J.* 388, 391–93, 301 *A.*2d 748 (1973) (finding that failure to give limiting instruction under prior *Evidence Rule* 56(2) not plain error, "base[d] very largely upon the overwhelming nature of the testimony pointing to defendant's guilt and the relative insignificance of the

*Vandeweaghe, supra,* 351 *N.J.Super.* at 480, 799 *A.*2d 1 (noting that, if expert relies on hearsay statement to formulate opinion, "the judge must advise the jury that it 'should not consider the hearsay statement as substantive evidence relating to the question of guilt or innocence of the accused, but only as evidence tending to support the ultimate expert conclusion of the [witness]' " (alteration in original) (quoting *State v. Farthing,* 331 *N.J.Super.* 58, 78, 751 *A.*2d 123 (App.Div.), *certif. denied,* 165 *N.J.* 530, 760 *A.*2d 784 (2000))).

■   In short, under *N.J.R.E.* 703, an expert may give the reasons for his opinion and the sources on which he relies, but that testimony does not establish the substance of the report of a non-testifying physician. *Day v. Lorenc,* 296 *N.J.Super.* 262, 267, 686 *A.*2d 1193 (App.Div.1996); *see also Vandeweaghe, supra,* 351 *N.J.Super.* at 480, 799 *A.*2d 1 (noting that hearsay statements upon which expert relies are "not admissible substantively as establishing the truth of the statement" (citations omitted)); *Brun, supra,* 390 *N.J.Super.* at 421, 915 *A.*2d 1053 (stating that an "MRI report could not be bootstrapped into evidence" through expert testimony).

Plaintiff argues that, because *Brun* was an unanticipated break with prior precedent, it should not have been considered in connection with a trial that preceded it. Again we disagree. Like this matter, *Brun, supra,* was a verbal threshold case in which the plaintiff, the victim of an automobile accident, claimed injury to her back. 390 *N.J.Super.* at 412–14, 915 *A.*2d 1053. A radiologist examined the plaintiff's MRI and authored a report finding a disc bulge and herniation. *Id.* at 412, 915 *A.*2d 1053. At trial, the defendant moved to bar or limit the testimony of the plaintiff's treating physician, a chiropractor, after the plaintiff had informed

testimonial references to his prior convictions"); *State v. Rajnai,* 132 *N.J.Super.* 530, 537–39, 334 *A.*2d 364 (App.Div.1975) (stating that limiting instruction should be given *sua sponte* when other–crime evidence is admitted, but failure to do so "will be disregarded unless it can be shown that it was 'clearly capable of producing an unjust result' " (citations omitted)).

the court that her neurologist would not testify. *Id.* at 414–15, 915 A.2d 1053. The judge subsequently ruled that before the treating physician could testify about the MRI findings, which were pivotal to the requisite permanency finding, a radiologist who was qualified to interpret the MRI would have to be called. *Id.* at 415, 915 A.2d 1053.[8]

The Appellate Division in *Brun* agreed with the trial judge's evidence ruling to the effect that the non-testifying expert's opinion was not substantively admissible under *N.J.R.E.* 703. Noting that an MRI report, "on objection, . . . could not be bootstrapped into evidence through [the treating physician's] testimony," *id.* at 421, 915 A.2d 1053, the court in *Brun* unequivocally rejected plaintiff's *N.J.R.E.* 703 claims on the basis of the prior cases of *Vandeweaghe* and *Day. Id.* at 422–23, 915 A.2d 1053.

■   Despite its language to the contrary, plaintiff continues to argue that *Brun* was a repudiation of what was, in fact, accepted practice—the use of a treating physician to testify to the substance of the report of an absent expert. Plaintiff is correct that some non-testifying expert reports have been admitted at trials substantively through another testifying witness.[9] *See Glowacki v. Underwood Mem'l Hosp.,* 270 *N.J.Super.* 1, 636 A.2d 527 (App.Div.1994); *Blanks v. Murphy,* 268 *N.J.Super.* 152, 632 A.2d 1264 (App.Div.1993); *Dietzeman v. Peterson,* 196 *N.J.Super.* 96, 481 A.2d 596 (Law Div.1984). However, what plaintiff fails to

---

[8] The case became more complicated when the plaintiff called a new radiologist who testified before the jury to different and graver conclusions than his predecessor. On objection by the defendants, the judge found that there was a "huge element of surprise" that prejudiced the defendants, because the plaintiff did not reveal the new findings prior to trial. *Brun, supra,* 390 *N.J.Super.* at 417, 915 A.2d 1053. The judge determined that the case could not go forward and dismissed it. The Appellate Division ultimately disagreed on the dismissal and ordered a new trial. *Id.* at 424, 915 A.2d 1053.

[9] Plaintiff does not rely on *N.J.R.E.* 803(c)(6), the business records exception, in this case. Such reliance would be misplaced in any event, because the MRI is a complex diagnostic tool that was never within the contemplation of the rule. *See State v. Matulewicz,* 101 *N.J.* 27, 29–30, 499 A.2d 1363 (1985).

recognize is that all expert reports and all trials are not the same. Thus, for example, as the Appellate Division in *Brun* explained:

In *Glowacki*, although the testifying physician was permitted to state that her diagnosis was based in part on a conversation with a radiologist concerning plaintiff's MRI, the witness was herself an orthopedic surgeon who independently reviewed the MRI in question. In *Blanks*, the hearsay information related by the testifying expert was contained in a hospital record already in evidence, and, most importantly, the included hearsay "was a straightforward observation of a treating physician which was not unfairly prejudicial to plaintiff in any respect." *Dietzeman* concerned only statements made to an examining physician by plaintiff, which assisted the doctor, an orthopedic surgeon, in confirming a diagnosis of a disc herniation, a conclusion he had already reached based on diagnostic tests including a CT scan and x-rays. None of the cases is similar to the matter under review and none sanctions the admissibility of testimony by Dr. Corey as to the MRI interpreted by Dr. Meyerson.

[*Brun, supra,* 390 *N.J.Super.* at 423–24, 915 *A.*2d 1053 (citations omitted).]

To be sure, trials regularly take place in which no objection to an out-of-court expert's report is raised and no request for a limiting instruction is advanced. Those situations arise where the adversary views the evidence as somehow helpful to his case or where he perceives it as inconsequential overall. In such instances, the jury will be unaware of any limitation on its use of the out-of-court expert's report.

But those situations are entirely distinct from this case. Here, plaintiff's testifying physicians either could not or did not interpret the MRI films; defendants challenged the correctness of the MRI report through their own experts, who were subject to rigorous cross-examination; and defendants raised a timely objection, asserting their right to cross-examine Dr. Default or, failing that, to an appropriate limiting instruction. Perhaps most important is that the MRI was the sole objective clinical evidence on the critical issue in dispute—permanency.

Indeed, it is not surprising that plaintiff could cite no reported case in which an out-of-court diagnosis was admitted substantively over the objection of the adversary. The reason for that failure is self-evident: there is simply nothing in our prior jurisprudence or in prior practice to suggest that the merits of an out-of-court report are admissible under such circumstances.

Plaintiff's reliance on *Macaluso v. Pleskin*, 329 *N.J.Super.* 346, 747 *A.*2d 830 (App.Div.), *certif. denied*, 165 *N.J.* 138, 754 *A.*2d 1214 (2000), is misplaced. We do not discern from our reading of *Macaluso* any support for plaintiff's position. Facially, that case stands for no more than that which *N.J.R.E.* 703 permits—that a testifying physician may apprise the trier of fact of the bases for his or her opinion, including the opinions of other experts. *Macaluso* is entirely silent regarding the need for a limiting instruction as to the substantive use of such evidence, where a request has been made. Moreover, nothing in *Macaluso* suggests that *N.J.R.E.* 703 would entitle a litigant to introduce an out-of-court expert's report for its "truth," where it is critical to the primary issue in the case and the adversary objects.

The reasons against the broad admissibility plaintiff argues for are many: it would violate the hearsay rules; contravene the standards governing expert testimony by allowing an expert to testify beyond his qualifications; and, most importantly, would defeat the cross-examination that is the bedrock of our adversary system. Here, Dr. Awari was unable to interpret the MRI and Dr. Ragukonis, although capable, did not do so. Thus, on objection, neither could establish the substance of the MRI report. Only a physician who was qualified by education or training to interpret the films and, in fact, did so, could have brought the herniation conclusion to the jury as a matter of substance.

Accordingly, as the Appellate Division properly held, defendants were denied a fair trial when Drs. Ragukonis and Awari were permitted to testify to the herniation without the limiting instruction that defendants requested, and when the motion to dismiss for failure to produce objective evidence of permanency was denied.

## V.

That is not the end of the story. Although ordinarily the appellate panel would have been correct in dismissing an AICRA case in which the permanency threshold was not satisfied, what

took place in this case requires a different disposition. Here, Dr. Default was on plaintiff's pre-trial witness list and available to testify. In fact, when defendants objected to Dr. Ragukonis and Dr. Awari testifying to the substance of Dr. Default's conclusions, plaintiff's counsel offered to call Dr. Default. In response, the trial judge overruled defendants' objection, allowed the testimony, and refused to issue a limiting instruction regarding the use of the MRI report, apparently relying on *N.J.R.E.* 703. Those rulings led plaintiff's counsel reasonably to conclude that Dr. Default was not a necessary witness.

That position was later confirmed when, at the end of plaintiff's presentation, defendants moved for a dismissal under AICRA. Had the judge showed any inclination to grant the motion, plaintiff could have moved to reopen the case to produce Dr. Default. Instead, the judge denied the motion outright. The only basis that we can discern for that denial was that the judge, like plaintiff, incorrectly believed that the MRI evidence already was substantively before the jury under *N.J.R.E.* 703. Only such a belief would have justified the denial of the motion, again because the MRI was the sole objective evidence of permanency. Given that mistaken notion, held by the judge and shared with counsel, fairness dictates that the dismissal is too harsh a remedy and that the matter should be tried anew.

## VI.

The judgment of the Appellate Division is reversed. The matter is remanded for a trial in accordance with the principles to which we have adverted.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS–7.

*Opposed*–None.