**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0675-24

MARTCHELA V. POPOVA-
MLADENOV,

     Plaintiff-Appellant,

and

MLADEN MLADENOV,

     Plaintiff,

v.

JASON M. COIGNE,

     Defendant-Respondent,

and

NJM INSURANCE GROUP and/or
NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendants.

_____

Argued January 5, 2026 – Decided February 12, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0387-21.

Richard T. Astorino argued the cause for appellant (Kotlar Cohen, LLC, attorneys; Richard T. Astorino, of counsel and on the brief).

Amanda B. Tosk argued the cause for respondent (Law Office of Hilary M. Kolb, attorneys; Amanda B. Tosk, of counsel and on the brief).

PER CURIAM

In this personal injury action, plaintiff Martchela V. Popova-Mladenov appeals from an October 28, 2024 order involuntarily dismissing her personal injury complaint under Rule 4:37-2(b) following three days of trial. Plaintiff primarily argues the court erred in concluding she failed to establish a permanent injury to her low back, as required under the verbal threshold statute, N.J.S.A. 39:6A-8(a), caused by the motor vehicle accident at issue. We affirm.

There is no dispute plaintiff was involved in a motor vehicle accident on January 23, 2019, when she struck a vehicle operated by Jason M. Coigne (Coigne). According to plaintiff, she inadvertently struck defendant's vehicle when he abruptly entered her lane of traffic on I-295 in Mount Laurel. Defendant did not dispute the accident but asserted that he was forced into the left lane after an unknown phantom car entered his lane. Following the accident, plaintiff complained of neck pain but declined medical attention at the time. On

February 9, 2019, plaintiff sought medical attention and diagnostic testing, including x-rays of her spine, which revealed "mild degenerative disc disease."

Months later, on April 7, plaintiff received an MRI of her low back, which showed "[p]ossible osteophyte extending into the lateral right neural foramen without evidence of significant neural foraminal narrowing or spinal canal stenosis at the level of T12-L1," and observed "[m]ild facet joint hypertrophy[]." These results were confirmed by a radiologist who did not testify at trial.

On January 19, 2021, plaintiff and her spouse, Mladen Mladenov, filed a six-count complaint, against defendants, including New Jersey Manufacturers (NJM). The suit alleged torts against defendant and the phantom driver for alleged permanent injuries to plaintiff's low back and a loss of consortium claim by Mladen Mladenov.[1]

On August 4, plaintiff submitted to an Independent Medical Evaluation (IME) with Joshua Landa, M.D., an orthopedic surgeon, who opined plaintiff had "damage to her lumbar spine, including permanent aggravation degenerative changes with resultant pain and functional limitations."

---

[1] Plaintiff sued NJM, her uninsured motorist carrier, after defendant claimed a "phantom" driver had fled the scene. After jury selection, all claims against NJM were dismissed.

3

Three months later, plaintiff underwent an examination by defendant's expert Steven Carl Hausmann, M.D., an orthopedic surgeon, who concluded plaintiff had "facet degeneration and some disc abnormalities with osteophytes projecting off the disc spaces in the upper lumbar spine," noting the findings were "consistent with degenerative spondylosis, which is age-related and not due to the [crash], and predated the [crash]." Dr. Hausmann further reported that his findings were based on "the degeneration seen on the MRI scan," and were not something that would have come on between the accident and the date of the performance of the April 7, 2019 MRI."

Dr. Landa submitted a rebuttal report on February 16, 2022, agreeing with Dr. Hausmann's diagnosis, but concluding "[i]t is likely that the pre-e[x]isting degeneration in her facet joints would be susceptible to injury in a traumatic event such as a motor vehicle accident, rendering them symptomatic. This pain has not resolved in time and is therefore likely a permanent injury." (Emphasis added).

On November 15, 2022, defendant moved for summary judgment on all counts, asserting plaintiff failed to establish that she had suffered a permanent injury, within a reasonable degree of medical certainty through objective credible evidence as required by the verbal threshold statute, N.J.S.A. 39:6A-

4

8(a).  Plaintiff opposed the motion, supporting her claim of permanency with a July 2, 2020 certification from Arik Mizrachi, M.D., a pain medicine and rehabilitation specialist, who identified himself as plaintiff's treating physician.[2]

The court denied defendant's motion for summary judgment and stated both parties "indicate that Dr. Landa states that [plaintiff] has permanent aggravation of degenerative changes as a direct result of the accident," and therefore "a reasonable fact finder could find that [plaintiff] has demonstrated through objective, credible medical evidence that her alleged injuries are both permanent and related to this accident as required by the lawsuit threshold."

Prior to trial, the court addressed various in limine motions filed by the parties, the result of which was:  to bar Dr. Landa's recorded testimony that relied on the report and opinions of the non-testifying radiologist; Dr. Landa's testimony in which he offered an opinion as to the cost of future medical expenses, as PIP benefits had not yet been exhausted; and Dr. Alexeev's testimony and opinion regarding causation and permanency due to plaintiff's failure to submit Dr. Alexeev's report prior to the expiration of the discovery end date.  The court likely made its ruling in part due to plaintiff's consent to

---

[2] Neither Dr. Mizrachi's expert report nor certification were presented during discovery and thus were not presented at trial.

A-0675-24

certain redactions to exclude Dr. Alexeev's testimony as to causation and permanency.

During trial, plaintiff presented testimony from Dr. Landa, who opined that plaintiff suffered a "permanent aggravation of degenerative changes" causing pain and functional limitations, while also acknowledging that her disc degeneration was pre-existing and that his conclusion of permanency was based on her reports of persistent pain.

Following the conclusion of plaintiffs' case in chief, defendant moved for an involuntary dismissal of the case under Rule 4:37-2(b)[3], arguing:

> [Plaintiff's] proof [does not] satisfy the requirements of the verbal threshold as a matter of law. There is no expert that gave an opinion that there was a permanent injury based on objective credible evidence." You heard the testimony, Dr. Aleveev said that there was spasm, which he says can be permanent. But he gives no opinion as to permanency and causation.

Defendant further argued Dr. Landa's testimony and opinion is permanent aggravation of degenerative changes, that is not based on anything that is objective. And, Dr. Landa "testified that the MRIs which were the only objective evidence discussed in his testimony were the same as they were – or

---

[3] Defendant also moved to dismiss the per quod claim, arguing it was the first time he had a per quod claim "where the spouse didn't testify."

A-0675-24

the arthritis or the facets that were on the MRIs were pre-existing," so the standard had not been met.

Prior to the conclusion of plaintiff's response, the court, outside the presence of the jury, inquired whether plaintiffs would be inclined to accept a final offer from the defense prior to its ruling on the motions. The judge next heard plaintiffs' argument and stated he would take some time to review the record. Prior to ruling on the motions, however, the judge explained "[i]f I grant the motion for an involuntary dismissal, that's the end of your case. I mean, you can always seek Appellate relief . . . but as far as this trial, the trial would be over."

After a brief recess to consider the parties' respective arguments, the court again inquired into whether plaintiff wanted to accept the offer to resolve the case or have him rule on the motion. After explaining the governing law and the applicable standard under Rule 4:37-2, and affording plaintiffs all favorable inferences, the court turned to the ultimate question for the jury: whether plaintiff had proven that she sustained a permanent injury by credible, objective medical evidence proximately caused by this accident, the answer is "no, there is not." In a corresponding written decision issued on December 5, 2023, the court stated:

A-0675-24

> This was an auto negligence/verbal threshold trial. The case was dismissed at the conclusion of plaintiff's case because no objective evidence (as opposed to only subjective evidence—i.e., reports of pain or no pain) was presented to support a finding of a permanent injury. As a matter of law[,] [p]laintiff could not vault the verbal threshold.

On December 19, 2023, plaintiff moved for reconsideration of the order granting involuntary dismissal and for a new trial, pursuant to Rule 4:49-2. Plaintiff claimed "the court erred in disregarding the entire testimony of [p]laintiff's treating doctor [,] [Dr. Alexeev] [who] provided key testimony as to objective evidence of permanent injury - spasm upon palpation."

Plaintiff additionally argued:

> "[T]he court erred in rejecting the objective evidence of permanent injury in [Dr. Landa's] testimony as to the MRI results and diagnostic aspect of the facet joint injections. [Dr. Landa] also testified that the injections confirm that the facet joints are the source of the pain. . . . [Dr.] Landa finds permanent injury in [p]laintiff's low back, causally related to the subject accident."

Plaintiff further asserted that the court erred by deciding the motion at the conclusion of her case, that the motion should have been held in abeyance until after the jury returned a verdict, and that the court's failure to do so infringed on her constitutional right to a jury trial and constituted a miscarriage of justice requiring a new trial.

A-0675-24

Finally, plaintiff contended that a new trial was warranted as the court's inquiry surrounding settlement before deciding the motion had "arguably coercive effects," although plaintiff did not specify how she was negatively affected.

The court denied plaintiff's motion for reconsideration, stating "[plaintiff] points to nothing that the Court overlooked when the original decision was made. Counsel is simply reiterating that he feels the [c]ourt's decision was wrong." The court concluded:

> The problem with plaintiff's case was that the basis of the plaintiff's expert opinion [(referring to Dr. Landa)] was what the plaintiff told him. That was what she said, i.e. that she was in pain. Such evidence[] obviously is subjective. However[,] the law requires objective proof in order to vault the verbal threshold. The record on [N]ovember 30th, 2023 is clear on its face as to the [c]ourt's findings of fact and conclusions of law. The [c]ourt finds no basis for error.

This appeal followed, with plaintiff rehashing many of the same arguments raised before the trial court.

We review a trial court's grant of a reconsideration motion for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an

impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Reconsideration should be granted where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Dennehy v. E. Windsor Reg'l Bd. of Educ., 469 N.J. Super. 357, 363 (App. Div. 2021) (alterations in original) (quoting Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010)).

"However, we owe no deference to a trial court's interpretation of the law," and review such issues de novo. Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

Likewise, we review a trial court's grant of a motion for involuntary dismissal of a negligence claim, Rule 4:37-2(b), by applying the same standard as the trial court. ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). We apply "the same evidential standard:  if, accepting as true all the evidence which supports the position of the party defending against the motion and according [them] . . . the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could

differ, the motion must be denied." Ibid. (internal quotations omitted) (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)).

A motion for involuntary dismissal is premised "'on the ground that upon the facts and upon the law the plaintiff has shown no right to relief,'" and "[t]he 'motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.'" Id. at 510 (quoting R. 4:37-2(b)). The standard governing a motion for involuntary dismissal under Rule 4:37-2(b) is the same as that governing a motion for summary judgment under Rule 4:46-2(c). Schneider v. Simonini, 163 N.J. 336, 360 (2000). "If the court, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, finds that reasonable minds could differ, then the motion must be denied." ADS Assocs. Grp., Inc., 219 N.J. at 510-11 (citation omitted). The "court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

By way of background, under New Jersey's Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, enacted in 1998, the

11

Legislature requires "every standard automobile liability insurance policy issued or renewed" to "contain personal injury protection (PIP) benefits" for persons "who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile." N.J.S.A. 39:6A-4. Individuals seeking automobile liability insurance must select one of two tort options: the "[l]imitation on lawsuit option" or the "[n]o limitation on lawsuit option." N.J.S.A. 39:6A-8.

Those covered by an insurance policy with the limitation-on-lawsuit option, also known as the "verbal threshold," have "a limited right of recovery" for noneconomic damages sustained in an automobile collision. DiProspero v. Penn, 183 N.J. 477, 486 (2005). In other words, they may recover for noneconomic damages only if the injuries meet the verbal threshold. See Davidson v. Slater, 189 N.J. 166, 189 (2007). An insured subject to the verbal threshold may, therefore, maintain an action for noneconomic losses only if he or she "has sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J.S.A. 39:6A-8(a).

A-0675-24

Moreover, a plaintiff must establish the existence of a permanent injury based on "objective clinical evidence," N.J.S.A. 39:6A-8(a), which "must be 'derived from accepted diagnostic tests and [not] be dependent entirely upon subjective patient response'" Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 234 (App. Div. 2020) (quoting Agha v. Feiner, 198 N.J. 50, 60 (2009)) (additional citations omitted); see also DiProspero, 183 N.J. at 495 (equating AICRA's "objective clinical evidence" standard with that of "credible, objective medical evidence" as articulated in Oswin v. Shaw, 129 N.J. 290, 314 (1992)). Lastly, because this is a negligence claim, a plaintiff must establish that the injury was proximately caused by the defendant's negligence. Davidson, 189 N.J. at 185.

Before us, plaintiff primarily asserts that reversal of the court's order is warranted and a new trial must be granted because: (1) she has met the standard for denial of defendant's motion for involuntary dismissal pursuant to Rule 4:37-2(b); (2) the court erred in interpreting the verbal threshold law as to the proof required to establish a permanent injury and overlooked the testimonial evidence; (3) it clearly and convincingly appears there was a miscarriage of justice under Rule 4:49-2; and (4) the court pressured her to settle when the ruling on the dismissal motion was imminent.

13

As to plaintiff's first argument she met the standard necessary for the court to deny defendant's motion for involuntary dismissal of her complaint and the court erred in disregarding the "entire testimony of [her] treating doctor, [Dr. Alexeev]" who "provided key testimony as to objective evidence of permanent injury – spasm upon palpitation." She further asserts that Dr. Landa's opinion on permanency was improperly excluded, as he "reviewed the lumbar MRI and testified that the facet joints were enlarged at multiple levels," the "injections confirm that the facet joints are the source of the pain," and that "[Dr.] Landa [found] permanent injury in [p]laintiff's low back, causally related to the subject accident."

As a preliminary matter, we reject plaintiff's arguments the court erred in deciding the Rule 4:37-2(b) motion prior to the conclusion of the trial and could have reserved its decision pending the outcome of the jury verdict. Rule 4:37-2(b) applies to matters at trial, following the presentation of plaintiff's evidence and the announcement to the court that plaintiff has rested, it provides defendant,

> may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. . . . [S]uch motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.
>
> [Rule 4:37-2(b).]

14

A-0675-24

Moreover, we have consistently held that a motion made at the conclusion of a plaintiff's case is required to be then decided since the rule, unlike a Rule 4:40-2 motion, provides no authorization for reserving a decision.[4] Castro v. Helmsley Spear, Inc., 150 N.J. Super. 160, 163-65 (App. Div. 1977). Thus, we are satisfied the court timely and properly ruled on defendant's motion.

We similarly reject plaintiff's substantive challenges to the involuntary dismissal of her complaint. Plaintiff maintains the court erred by granting defendant's motion for a directed verdict due to its disregard of Dr. Alexeev's testimony. A review of this record, however, makes abundantly clear that another judge had granted a pre-trial motion barring Dr. Alexeev's testimony and opinion regarding causation and permanency; two critical aspects of plaintiff's case, due to the failure to provide a timely narrative report. Moreover, the record shows that plaintiff consented to certain of those redactions. Significantly, Dr. Alexeev also admitted that "what he didn't do and . . . couldn't do, was say that that spasm was causally related to this accident," and "it would be too speculative, . . . it could be from anywhere." Having consented to

---

[4] Rule 4:40-2 provides that the court may reserve decision on a motion for judgment notwithstanding the verdict made at the close of all of the evidence, submit the case to the jury and then decide the motion either before or within ten days after the verdict.

15

redactions, including Dr. Alexeev's testimony regarding permanency and causation, we conclude there is no merit to plaintiff's argument the court erred in finding the record devoid of objective evidence of a permanent injury to her low back, which was causally related to the subject accident.

As to Dr. Landa, he testified plaintiff had "permanent aggravation of degenerative changes with resultant pain," and agreed that pain was subjective in nature, and all other findings on the MRI were pre-existing. Dr. Landa based his findings as to permanency on plaintiff's unresolved pain, concluding that because her pre-existing degeneration had become symptomatic following the accident, and her pain had not resolved, the injury was "likely permanent."

The court engaged in a thorough analysis of the testimony and plaintiff's arguments, noting in particular that plaintiff "very candidly streamlined things . . . by saying look this case turns on Joshua Landa's testimony not Dr. Alexeev." And, further that "even though Dr. Alexeev mentions spasm, . . . and spasm can certainly be considered objective evidence, what he didn't do and I guess couldn't do, was say that that spasm was causally related to this accident." Next, in reviewing Dr. Landa's testimony, the court explained that Dr. Landa's determination that the accident aggravated plaintiff's degenerative changes and she "likely" had a permanent injury and based his opinion on plaintiff's

16

subjective complaints of pain, rather than presenting objective medical evidence to the jury "from which they can 'hang their hat,'" which is insufficient as a matter of law to satisfy the verbal threshold.  See Agha, 198 N.J. at 60.

In Agha, our Supreme Court made clear that subjective complaints of pain, standing alone, are insufficient to satisfy the verbal threshold; a plaintiff must present objective clinical evidence from accepted diagnostic tests establishing a permanent injury within a reasonable degree of medical probability.  Id. at 60-61.

Because plaintiff failed to present such objective, credible medical evidence linking a permanent low-back injury to the subject accident, and even affording plaintiff all reasonable inferences based on her testimony and evidence of low back injury, the court properly granted defendant's motion.  In reaching this conclusion, we considered, as the court did, that there is no dispute the accident occurred or even that plaintiff was injured as a result of the accident. Nevertheless, Dr. Landa, plaintiff's IME expert, opined that the MRI results showed evidence of pre-existing disc degeneration, which was aggravated due to the accident based solely on plaintiff's subjective complaints of pain.  Stated differently, the court found Dr. Landa's finding the accident caused permanent aggravation of degenerative changes resulting in pain and functional limitations

17

was unsupported by the evidence. We concur with the court's determination there was no objective medical evidence such as an MRI or other diagnostic test showing plaintiff's condition pre-accident for comparison purposes, and subjective complaints of pain arising after the accident are insufficient to vault the verbal threshold.

Finally, we conclude plaintiff's contentions the court's "encouragement" to consider settlement before ruling on the motion was prejudicial and its assessment of her credibility should have precluded dismissal, are without merit. On the contrary, the record shows the court explained the motion, defendant's final offer and the consequences of a decision to grant an involuntary dismissal. The court also took special care to ensure that plaintiff and her counsel had sufficient time to discuss the motion with each other and with plaintiff's husband, who was not present in court at the time. Under these circumstances, we observe no abuse of discretion by the court.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

18                                                                 A-0675-24