NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3543-13T2

WILLIAM JAMES,

    Plaintiff-Appellant,

v.

ROSALIND RUIZ,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

March 25, 2015

APPELLATE DIVISION

Argued January 26, 2015 - Decided March 25, 2015

Before Judges Sabatino, Guadagno[1] and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-8432-11.

John L. Zaorski argued the cause for appellant (Cappuccio & Zaorski, LLC, attorneys; Mr. Zaorski and Tammy M. Maxey, on the brief).

Chad M. Moore argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Moore, of counsel and on the brief; Juliann M. Alicino, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

---

[1] Judge Guadagno did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).

We address in this appeal the propriety of questioning an expert witness at a civil trial, either on direct or cross-examination, about whether that testifying expert's findings are consistent with those of a non-testifying expert who issued a report in the course of an injured plaintiff's medical treatment. We also consider the propriety of counsel referring to the non-testifying expert's findings in closing argument.

Although the general legal principles on point have been discussed in prior cases, and the pertinent rules of evidence have been in force for decades, there appears to be some confusion and uneven customs in applying those principles and rules in everyday civil trial practice. Hence, we use this occasion to clarify whether questions may be posed about the "consistency" or "inconsistency" of a testifying expert's opinions with a non-testifying expert's views, and whether arguments about such consistency or inconsistency may be advocated in closing argument to a jury.

We hold that a civil trial attorney may not pose such consistency/inconsistency questions to a testifying expert, where the manifest purpose of those questions is to have the jury consider for their truth the absent expert's hearsay opinions about complex and disputed matters. Even where the questioner's claimed purpose is solely restricted to impeaching the credibility

of an adversary's testifying expert, spotlighting that opposing expert's disregard or rejection of the non-testifying expert's complex and disputed opinions, we hold that such questioning ordinarily should be disallowed under N.J.R.E. 403. Lastly, we hold that the closing arguments of counsel should adhere to these restrictions, so as to prevent the jury from speculating about or misusing an absent expert's complex and disputed findings.

Because the trial court correctly applied these principles here in ruling on objections at trial, we affirm.

I.

The circumstances presented in this case are quite common. In essence, we have before us a classic dispute in an automobile accident case over whether the plaintiff sustained a permanent injury to his spine and thereby is entitled to pain and suffering damages under the lawsuit limitation provision (also known as the "verbal threshold") in the Automobile Insurance Cost Reduction Act ("AICRA"), N.J.S.A. 39:6A-1.1 to -35.

AICRA is a cost-containment measure that allows insured drivers to pay lower premiums in exchange for a limitation on their right to sue for noneconomic damages. See DiProspero v. Penn, 183 N.J. 477, 480-81 (2005). One of the recurring issues in automobile negligence cases involving plaintiffs who are subject to the AICRA verbal threshold is whether there is objective

and persuasive proof that they suffered in a motor vehicle accident "a permanent injury within a reasonable degree of medical probability." N.J.S.A. 39:6A-8(a); see also DiProspero, supra, 183 N.J. at 481.[2]  In many instances, such as this case, the key issue at trial is whether such a permanent injury caused by the accident has been established, with both sides presenting competing expert testimony on that question.

The record here shows that plaintiff was operating his car on July 2, 2010 on the Atlantic City Expressway.  He stopped his car at a toll booth behind defendant's vehicle.  Defendant's car then suddenly went in reverse and backed into plaintiff's car. Defendant ultimately pled guilty to improper backing up, in violation of N.J.S.A. 39:4-127, in municipal court.

Plaintiff went to a local emergency room after the accident, complaining of lower back pain.  He then underwent treatment with an orthopedic physician for the lumbar pain.  The treating physician ordered a CT scan of the lumbar spine, which was conducted on July 21, 2010, less than three weeks after the accident.  The CT scan was interpreted by Dr. Amerigo Falciani, a

---

[2] "An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8(a).

radiologist. In his written one-page report, Dr. Falciani determined, among other findings, that the CT scan showed a "small diffuse [disc] bulge at the L4-L5 level."[3]

Plaintiff's back pain persisted, and he was evaluated by Dr. Stephen J. Zabinski, a Board-certified orthopedic surgeon, in December 2012. Among other things, Dr. Zabinski personally examined the CT scan that had been conducted in July 2010. Based on Dr. Zabinski's review of the CT scan, he likewise concluded that the CT scan showed disc bulging at the L4-L5 level. Dr. Zabinski concluded that the lumbar disc bulge was traumatically caused by the July 2010 car accident, and that it was a permanent injury not likely to heal or to function normally in the future, despite the passage of time and continued treatment.

Plaintiff filed a lawsuit against defendant, alleging that she had negligently caused the accident and that the accident had caused him to sustain permanent injuries. Defendant did not contest liability for the accident, but she did dispute whether plaintiff had sustained a permanent injury that would enable him to vault the verbal threshold.

---

[3] Dr. Falciani also noted in his report "mild narrowing" of the disc space at the L1-L2 level, a condition which was not advocated by plaintiff at trial.

At the request of the defense, a Board-certified orthopedic surgeon, Dr. John A. Cristini, examined plaintiff in September 2012. Dr. Cristini specifically noted Dr. Falciani's finding of disc bulge within his first pretrial expert report, which contained this passage:

> The CT of the lumbar spine reported by Dr. Falciani revealed a small diffuse broad based bulge at L4-5 and disc space narrowing at L1-2.

Dr. Cristini thereafter was provided with a CD containing the CT scan itself, and he personally inspected it. In a supplemental expert report he issued in July 2013, Dr. Cristini stated:

> As part of [the treating orthopedist's] evaluation, CT scans were obtained. These were carried out at Atlantic Medical Imaging and were available to me at this time on CD format. The CT of the lumbar spine dated 7/21/10 was reviewed. No evidence of disc or bone pathology was noted, specifically <u>no disc herniation at any level was evident</u>. No spondylosis or spondylolisthesis was noted.
>
> [(Emphasis added).]

Although he found no "herniation" at L4-L5 from his review of the CT scan, Dr. Cristini did not specifically comment in his supplemental report as to whether he agreed or disagreed with Dr.

Falciani's finding of a "bulge," which he had referred to in his first report.[4]

The matter was tried as a damages-only case before Judge James P. Savio. The critical issue was whether plaintiff had established by a preponderance of the evidence a permanent injury that overcame the AICRA verbal threshold. Plaintiff relied upon the expert testimony of Dr. Zabinski, and defendant relied on the competing expert opinions of Dr. Cristini. Neither side called Dr. Falciani.

Both plaintiff and defendant testified about the physical impact of the accident. Plaintiff also testified about his injuries and his course of treatment.

Several days before trial, plaintiff's counsel took the videotaped deposition of Dr. Zabinski for use at trial in lieu of his live testimony. In that de bene esse deposition, Dr. Zabinski opined, as he had in his expert report, that plaintiff had sustained a permanent injury from the accident.

During a brief portion of Dr. Zabinski's videotaped direct examination, plaintiff's counsel asked him the following questions and elicited the following answers:

---

[4] A disc herniation is generally considered "a more severe injury than a disc bulge." Espinal v. Arias, 391 N.J. Super. 49, 55 (App. Div.), certif. denied, 192 N.J. 482 (2007).

Q:    And, Doctor, from your own review of
      the [CT] scan, you  saw the bulge at
      L4-5.  Correct?

A:    Yes.

Q:    Was that <u>consistent</u> with what the
      radiologist saw in the report?

A:    Yes.

[(Emphasis added).]

Defense counsel did not object to this line of testimony at the time of the deposition.[5]  However, in his pretrial submission under Rule 4:25-7, defense counsel more broadly urged the trial court to bar plaintiff's expert from testifying "as to any opinions of non-testifying doctors."  The defense's Rule 4:25-7 submission also urged that Dr. Zabinski's videotaped testimony be edited and that the court issue rulings on defense objections before trial. Citing case law that restricts the admission of hearsay opinions on disputed complex matters, including radiology studies, the defense maintained that since the plaintiff's testifying expert, Dr. Zabinski, "reviewed the [CT scan] himself," there was "no need for him to discuss what another doctor found."

---

[5] Defense counsel did timely object to a different portion of Dr. Zabinski's testimony concerning whether the radiologist had noted any degeneration at L4-L5, which was excluded at trial and edited out of the videotape. Later at trial, defense counsel explained that he had not objected to the "consistency" testimony at the deposition because Dr. Zabinski did not get into "an area that was far more specific" in conveying Dr. Falciani's findings.

The defense presented expert orthopedic testimony at trial from Dr. Cristini. For scheduling reasons, Dr. Cristini's testimony was presented out of turn before the videotape of Dr. Zabinski was played during plaintiff's direct case.

Dr. Cristini told the jury that he had personally examined the CT scan. He was more definitive in his testimony about the CT scan than he had been in his pretrial reports, referring to a display of the CT scan being shown in the courtroom to the jury. Based upon his personal review of the cross-sections of the spine, Dr. Cristini testified that there was "no indication in [his] opinion of any disc pathology or disc bulges or herniations at that [L4-L5] level." (Emphasis added).

On direct examination, Dr. Cristini expressly repudiated the contrary opinion of Dr. Zabinski, advising the jury that he "disagree[d] with" his testifying counterpart's finding of a disc bulge. Based on this determination, along with his physical examination of plaintiff and his "review of the medical records," Dr. Cristini concluded that plaintiff had not sustained a permanent orthopedic injury from the accident. Notably, Dr. Cristini was not asked about Dr. Falciani's findings during his direct examination.

On cross-examination, plaintiff's counsel attempted to show that Dr. Cristini's finding of the absence of a bulge was

inconsistent with the finding of the radiologist, Dr. Falciani. The following exchange occurred:

> [PLAINTIFF'S COUNSEL]: You discussed in your first report that a CT scan was done, correct?
>
> [DR. CRISTINI]: Yes.
>
> Q: And the CT scan was dated July 21st, 2010, correct?
>
> A: I believe so.
>
> Q: Okay. And in the report you also discuss the results of that CT scan, correct?
>
> A: The report, that's correct.
>
> Q: Okay. And what did you learn from that report?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Sustained. The report is hearsay. Right.

At that point, Judge Savio had a sidebar conference with counsel, at which the court considered more fully their positions about the propriety of the attempted questioning. The judge reasoned that the questioning of Dr. Cristini about the hearsay opinions of the non-testifying radiologist was disallowed by case law and the evidence rules.

Among other things, Judge Savio characterized the radiologist's interpretation of the CT scan and the finding of disc bulge as a "complex medical diagnosis." Given that

complexity, the judge ruled that the radiologist's finding of a bulge should not be inquired about on cross-examination where, as here, the defense expert had not relied on the radiologist's opinion. However, the judge did permit plaintiff's counsel to confirm on further cross-examination of Dr. Cristini that he had issued his first expert report without personally reviewing the CT scan.

Judge Savio rejected plaintiff's argument that defense counsel's failure to object to the "consistency" testimony elicited from Dr. Zabinski at his videotaped deposition justified plaintiff probing into the radiologist's findings on cross-examination of Dr. Cristini. The judge ruled that "if [plaintiff's] purpose is to suggest to Dr. Cristini that the radiologist had a conclusion or an opinion or a finding that's different from Dr. Cristini, I'm not going to allow that." The judge warned plaintiff's counsel, "You're not going to backdoor the radiologist's opinion into this case. He's not here to testify."

As the cross-examination proceeded and drew further objections because plaintiff's counsel further attempted to question Dr. Cristini about the absent radiologist's findings, Judge Savio issued a cautionary instruction to the jury. The judge explained that it was not proper for them to consider

11                                                          A-3543-13T2

documents prepared by others that were not relied upon by the testifying witness, Dr. Cristini. The judge further explained that it could not allow "Dr. Cristini to testify that someone else examined the patient and had this particular complex diagnosis. That would be hearsay and that would not be appropriate."

As noted, plaintiff did not call the radiologist, Dr. Falciani, to testify. He did present the videotape of Dr. Zabinski, which included the brief "consistency" question and answer.

The third time Dr. Falciani's findings came up was during the summation of plaintiff's counsel. In the course of his argument to the jury, plaintiff's counsel stated the following, which provoked an objection from defense counsel:

> PLAINTIFF'S COUNSEL: [W]hat we have here is a CT scan that ultimately shows at L4-5, that there is a bulging disc. You heard Dr. Zabinski testify as far as what is there. You also heard him indicate in his testimony that that is <u>consistent with what the radiologist saw</u>.
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Sustained. Please disregard whatever con--whatever a radiologist might have determined. Ladies and gentlemen, the radiologist did not testify here. We are talking [solely] about the testimony of Dr. Zabinski and the testimony of Dr. Cristini.
>
> [(Emphasis added).]

At that point, plaintiff's counsel reminded the court that Dr. Zabinski had testified in the video deposition about the consistency of his findings with those of Dr. Falciani, without any objection by defense counsel. Judge Savio acknowledged that lack of objection, but nonetheless concluded that "the rule of law" forbids plaintiff from making that consistency argument to the jury. The judge then instructed the jurors once again that they should "disregard anything about the radiologist's opinion."

After the jury was sent out to deliberate,[6] plaintiff's counsel amplified his legal position opposing the limitation the court had imposed on his summation. He beseeched the court that he would have called the radiologist to testify, had he known before trial that he would not be able to argue about the inconsistency or consistency of the respective orthopedists' opinions with those of Dr. Falciani. Judge Savio reaffirmed his rulings, although he acknowledged that the disallowance of the references to Dr. Falciani's findings, if they were overturned on appeal, "could have affected the outcome in this case."

The jury returned a unanimous verdict, concluding that plaintiff had not proven a permanent injury caused by the accident,

---

[6] The defense has not argued in its brief that the case should have been dismissed at the close of the proofs for failure to surmount the verbal threshold.

signifying that he was not eligible to recover noneconomic damages under AICRA.

This appeal followed, which solely focuses on the trial court's rulings as to the "consistency" and "inconsistency" queries and arguments.

II.

The Basic Elements of Hearsay.

The pivotal issues before us arise because the findings of Dr. Falciani, the radiologist who did not testify at trial, are hearsay, if offered for their truth. Hearsay consists of three classic elements: (1) a "statement;" (2) "other than one made by the declarant while testifying at the [present] trial or hearing;" and (3) offered in evidence for its truth, i.e., "to prove the truth of the matter asserted" in the statement. N.J.R.E. 801(c).

The third element within the hearsay definition encompasses previously-made statements offered for their truth,[7] as opposed to statements offered for some other purpose that does not hinge upon their truth. As just one example, "'[w]here statements are

---

[7] This is commonly known as the "substantive" use of an absent declarant's statements. See, e.g., California v. Green, 399 U.S. 149, 155, 90 S. Ct. 1930, 1933, 26 L. Ed. 2d 489, 495 (1970); Liptak v. Rite Aid, Inc., 289 N.J. Super. 199, 218 n.6 (App. Div. 1996) (noting that defendant "offered the [hearsay] record solely as substantive evidence (i.e., to prove the truth of the contents thereof)").

offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not deemed inadmissible hearsay.'" Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007) (quoting Russell v. Rutgers Cmty. Health Plan, 280 N.J. Super. 445, 456-57 (App. Div.), certif. denied, 142 N.J. 452 (1995)).

The long-standing policy disfavoring the admission of hearsay in Anglo-American courts, as codified in New Jersey, instructs that "[h]earsay is not admissible except as provided by [the evidence] rules or by other law." N.J.R.E. 802 (emphasis added). This general prohibition, subject to various exceptions, reflects that hearsay is presumptively deemed to be "untrustworthy and unreliable." See, e.g., One Step Up v. Sam Logistic, 419 N.J. Super. 500, 507 (App. Div. 2011) (citation omitted). "The hearsay prohibition 'ensure[s] the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination . . . or the jury's critical observation of the declarant's demeanor and tone.'" Neno v. Clinton, 167 N.J. 573, 579 (2001) (quoting State v. Engel, 99 N.J. 453, 465 (1985)).

The risks of admitting hearsay indiscriminately are well known. "[S]tatements made out-of-court, not under oath, or not

subject to cross-examination may suffer infirmities of perception, memory, and narration if admitted."  Id. at 579-80 (citing McCormick on Evidence § 245 (5th ed. 1999)).  In addition, there can be an aspect of unfairness, even in civil cases,[8] in the substantive admission of hearsay statements by an absent declarant, without affording the opposing party a chance to cross-examine that person before the fact-finder.  See, e.g., Alves v. Rosenberg, 400 N.J. Super. 553, 563-65 (App. Div. 2008) (reversing a jury verdict and remanding for a new trial where the judge had unfairly allowed the wholesale admission of numerous hearsay statements, thereby depriving the appellant of "the opportunity for full and effective cross-examination at trial").

Without question, Dr. Falciani's radiology report contains "statements."  Those statements indisputably were made at a previous time, rather than "while [Dr. Falciani was] testifying at the trial."  N.J.R.E. 801(c).  Hence, the first two elements of hearsay are manifestly present.  The third element — the substantive use of those statements for their truth — we consider

---

[8] We confine our analysis in this case to civil matters, and do not address the application of these hearsay principles to criminal cases, where the constitutional rights of a criminal defendant under the Confrontation Clause may be at stake.  See Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); State v. Weaver, 219 N.J. 131 (2014).

more closely, <u>infra</u>, when we respectively discuss the references to Dr. Falciani's findings during plaintiff's counsel's direct examination of Dr. Zabinski and his attempted cross-examination of Dr. Cristini.

Accepting, for the moment, the premise that Dr. Falciani's findings are hearsay without yet discussing the third definitional element, we turn to whether those findings satisfy an exception to the hearsay rule. Since the findings are contained in a written report, it is useful to the analysis to consider whether the report itself would meet a hearsay exception, even though neither party attempted to move the report into evidence.

<u>The Business Records Exception (N.J.R.E. 803(c)(6))</u>

The most fitting potential exception here is the business record provision, <u>N.J.R.E.</u> 803(c)(6), which permits the admission of:

> [a] statement contained in a writing or other record of acts, events, conditions, and, <u>subject to Rule 808, opinions or diagnoses</u>, made <u>at or near the time of observation by a person with actual knowledge or from information supplied by such a person</u>, if the writing or other record was <u>made in the regular course of business</u> and it was the regular practice of that business to make it, <u>unless</u> the sources of information or the method, purpose or circumstances of preparation indicate that <u>it is not trustworthy</u>.
>
> [(Emphasis added).]

Here, it is readily evident that Dr. Falciani's report interpreting plaintiff's CT scan was generated in the regular course of professional medical practice, in connection with plaintiff's treatment and diagnosis. The report was contemporaneous with the radiologist's review of the CT scan. There is nothing irregular about the report, at least on its face. Indeed, it appears in all respects to be a routine medical document. There is no indication that Dr. Falciani prepared the report for the purposes of litigation.

The Complex/Disputed Expert Opinion Restriction (N.J.R.E. 808)

The analysis does not stop there, however. Even if the other elements of the business record exception are fulfilled, opinions set forth within a radiologist's report may be inadmissible under N.J.R.E. 808, which is cross-referenced within N.J.R.E. 803(c)(6).[9] N.J.R.E. 808 limits the presentation of hearsay expert opinions to a factfinder. Specifically, N.J.R.E. 808 directs as follows:

> Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the

___

[9] A report, or portions of it, also may be inadmissible under N.J.R.E. 803(c)(6) if it is shown to be "not trustworthy." Ibid. Because trustworthiness, as shown infra, is also a consideration under Rule 808, we subsume our discussion of that issue within the Rule 808 analysis.

> circumstances involved in rendering the
> opinion, including the motive, duty, and
> interest of the declarant, whether litigation
> was contemplated by the declarant, the
> complexity of the subject matter, and the
> likelihood of accuracy of the opinion, tend
> to establish its trustworthiness.
>
> [(Emphasis added).]

The import of N.J.R.E. 808, a provision that has no analogue in the federal rules, is that some expert opinions contained in business records or other sources are admissible, but others are not. As the Rule instructs, the non-testifying expert's opinions must be excluded, unless the trial judge finds that the "circumstances involved in rendering the opinion . . . tend to establish its trustworthiness." Ibid. The judge must consider the non-testifying expert's motive, duty, and interest in issuing the opinion. Ibid. The judge also must consider whether the expert declarant had litigation in mind at the time. Ibid. In addition, the judge must evaluate the "complexity" of the subject matter involved, and the likelihood[10] that the opinion is

---

[10] This likelihood requirement in Rule 808 suggests greater stringency than the test of simple relevance, which entails only a mere "tendency in reason to prove or disprove any fact of consequence to the determination in the action." N.J.R.E. 401 (emphasis added); see State v. Deatore, 70 N.J. 100, 116 (1976) (observing that "the test [for relevance] is broad and favors admissibility," although it is subject to countervailing factors under what is now N.J.R.E. 403).

"accurate," ibid., including that the opinion has been generated through an appropriate scientific or technical methodology. See, e.g., Kemp v. State, 174 N.J. 412, 430 (2002) (applying the three-part expert admissibility test of State v. Kelly[11]); see also Hisenaj v. Kuehner, 194 N.J. 6, 16-17 (2008) (reaffirming and applying the Kelly test in a civil context).

Rule 808 codifies limiting concepts articulated by the Supreme Court in an earlier criminal case, State v. Matulewicz, 101 N.J. 27, 30 (1985) (establishing criteria to admit a non-testifying expert's laboratory findings in narcotics prosecutions,[12] noting that the inclusion of those findings within

---

[11] In its seminal opinion in State v. Kelly, 97 N.J. 178, 208 (1984), the Supreme Court outlined the three "basic requirements" of expert testimony in this State, consisting of: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony." Here, defendant does not claim that the scientific methodology used by Dr. Falciani in interpreting plaintiff's CT scan fails to adhere to these basic requirements.

[12] The admissibility of such hearsay laboratory findings against an accused has been more recently complicated by the United States Supreme Court's post-Crawford opinions interpreting the Confrontation Clause. See, e.g., Bullcoming v. New Mexico, ___ U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); State v. Williams, 219 N.J. 89 (2014). We need not concern ourselves with those Confrontation Clause rulings in this civil context.

a business record does not automatically assure their admission at trial).  As the Court noted in <u>Matulewicz</u>, case law in our State has traditionally admitted "routine" findings of experts contained in medical records that satisfy the business record exception, but has excluded "diagnoses of complex medical conditions" within those records.  <u>Id.</u> at 32 n.1.

We explained and applied the significant hurdles posed by <u>Rule</u> 808 in <u>Nowacki v. Community Medical Center</u>, 279 <u>N.J. Super.</u> 276 (App. Div.), <u>certif. denied</u>, 141 <u>N.J.</u> 95 (1995).  The plaintiff in that case fell and was injured while climbing onto a table during radiation treatment at a hospital.  The plaintiff's hospital records included certain entries by non-testifying doctors, stating that the fractures she sustained were "pathologic" in nature and therefore not caused by the trauma of the fall. Applying the precepts of <u>Rule</u> 808, we concluded that these hearsay entries within the hospital records stated "a complex diagnosis involving the critical issue in dispute, as opposed to an uncontested diagnosis or insignificant issue."  <u>Id.</u> at 284.

We rejected the notion in <u>Nowacki</u> that the record entries comprised supporting "facts or data" that could be discussed by defendants' testifying experts under <u>N.J.R.E.</u> 703,[13] and instead

---

[13] See our discussion of <u>N.J.R.E.</u> 703, <u>infra</u>.

deemed them expert "opinions" subject to the strictures of Rule 808. Id. at 285. Accordingly, we upheld the trial judge's decision to disallow references to those hearsay opinions during the trial. Ibid.

If the requirements of Rule 808 are met, and a testifying expert has reasonably relied upon the non-testifying expert's opinions, then the testifying expert may be permitted to refer to that absent expert's opinions in the course of explaining his or her own opinions in court. Macaluso v. Pleskin, 329 N.J. Super. 346, 355 (App. Div.), certif. denied, 165 N.J. 138 (2000); In re Civil Commitment of J.M.B., 395 N.J. Super. 69, 93 (App. Div. 2007), aff'd, 197 N.J. 563, cert. denied, 558 U.S. 999, 130 S. Ct. 509, 175 L. Ed. 2d 361 (2009). However, this pathway should not be used as a "subterfuge to allow an expert to bolster the expert testimony by reference to other opinions of experts not testifying." Richard J. Biunno, Harvey Weissbard & Alan L. Zegas, Current N.J. Rules of Evidence, cmt. 7 on N.J.R.E. 703 (2014).

### "Facts or Data" Relied Upon By A Testifying Expert Under N.J.R.E. 703

Apart from containing opinions that may or may not be excludable at trial under Rule 808 depending upon their complexity and trustworthiness, a non-testifying expert's report may also convey facts or data. The rules of evidence, specifically Rule

703, permit testifying experts to refer to such facts or data from a hearsay or other admissible source, but subject to significant restrictions.

As to facts or data, N.J.R.E. 703 provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
>
> [(Emphasis added).]

In accordance with these terms of Rule 703, and subject to other potential rules of exclusion,[14] a testifying expert may refer to "facts or data" provided by another source, even though expressed through a hearsay statement. See, e.g., State v. Torres, 183 N.J. 554, 576 (2005); Riley v. Kennan, 406 N.J. Super. 281, 295 (App. Div.), certif. denied, 200 N.J. 207 (2009). The source may be a non-testifying expert who examined a person, place or object, so long as the information he or she has conveyed is "of a type

---

[14] For instance, the facts or data might be barred under N.J.R.E. 403 (granting judges the discretion to exclude relevant evidence where countervailing factors such as undue prejudice or cumulativeness "substantially" outweigh the evidence's probative value).

reasonably relied upon by other experts in the particular field." See N.J.R.E. 703.

Our Supreme Court has stated that under N.J.R.E. 703, "a testifying physician may apprise the trier of fact of the bases for his or her opinion, including the opinions of other experts," but has cautioned that that does not "entitle a litigant to introduce an out-of-court expert's report for its 'truth,' where it is critical to the primary issue in the case and the adversary objects." Agha v. Kelly, 198 N.J. 50, 67 (2009). Although the Court did not cite to N.J.R.E. 808 in Agha, its observations in this regard as to "opinions" are consistent with the principles expressed in Rule 808 and related case law, which we have discussed, supra, prohibiting the contested admission of complex hearsay opinions from a non-testifying expert.

When facts or data from a hearsay source are referred to in the course of an expert's trial testimony, it is vital that the factfinder consider that background information solely for the limited purpose of understanding the basis of the testifying expert's opinions. Mclean v. Liberty Health Sys., 430 N.J. Super. 156, 173-74 (App. Div. 2013). The testifying expert must not function as a mere "conduit" for the substantive admission of inadmissible hearsay. Agha, supra, 198 N.J. at 63.

To summarize, the combined impact of Rules 703 and 808 is to limit the ability of a testifying expert to convey to a jury either (1) objective "facts or data" or (2) subjective "opinions" based upon such facts, which have been set forth in a hearsay report issued by a non-testifying expert. In either instance, the testifying expert may not serve as an improper conduit for substantive declarations (whether they be objective or subjective in nature) by a non-testifying expert source.

Brun, Agha, and Non-Testifying Radiologists

Two recent precedential cases — one from our court, see Brun v. Cardoso, 390 N.J. Super. 409, 421 (App. Div. 2006), and one from the Supreme Court, see Agha, supra, 198 N.J. at 64 — have applied those limitations to the specific context of a testifying expert alluding to the hearsay findings of a non-testifying radiologist in a verbal threshold case. Mainly applying Rule 808, Brun focused on the "opinion" aspects of an absent radiologist's findings, while Agha focused largely on the "facts or data" aspects of the hearsay findings in applying Rule 703. As we will show, the overarching principle in both of these cases was the same: to disallow the substantive admission of hearsay assertions of a non-

testifying radiologist for their truth, at least as to disputed or complex matters.[15]

In Brun, supra, we held that a radiologist's hearsay MRI report diagnosing a herniated disc could not be "bootstrapped" into evidence through expert testimony from a treating chiropractor over the objection of opposing counsel. 390 N.J. Super. at 421. The chiropractor lacked the expertise to read the MRI films himself, and instead relied on the radiologist's finding. Ibid. The defense disputed the absent radiologist's interpretation of the films. Under those circumstances, we held that the complex nature of the disputed MRI prohibited an unqualified testifying expert from conveying the absent radiologist's findings to the jury. Id. at 421-24. In reaching that determination, we applied Nowacki and other cases reflecting the principles now codified in Rule 808:

> [W]e agree with the judge that, on objection, interpretation of an MRI may be made only by a physician qualified to read such films, and that the MRI report could not be bootstrapped into evidence through [the testifying chiropractor's] testimony. Our conclusion is

---

[15] We need not resolve here generically whether a radiologist's findings are most properly classified as "opinions," as "facts or data," or as some combination of the two. For the reasons we present here, the classification is inconsequential to the analysis because the guiding principles here under Rules 808 and 703 are harmonious. In any event, Dr. Falciani's disputed finding of a disc bulge here clearly encompassed, at least to some degree, his subjective professional opinion.

not dependent on [the witness's] status as a chiropractor but on the complexity of MRI interpretations. While there are numerous cases that support the admission of medical reports under the business records exception to the hearsay rule . . . in [Matulewicz, supra,] the Court made it clear that it is "the degree of complexity of the procedures utilized in formulating the conclusions expressed in the [expert's] report" that determines its admissibility under the business records exception. 101 N.J. 27, 30. We have held that before introducing complex medical reports pursuant to N.J.R.E. 803(c)(6), the ability of the opposing side to cross-examine the author of such a report must be assured. [Nowacki, supra, 279 N.J. Super. at 282-83]. In Nowacki, we held that it is "clearly established that medical opinions in hospital records should not be admitted under the business records exception where the opponent will be deprived of an opportunity to cross-examine the declarant on a critical issue such as the basis for the diagnosis or cause of the condition in question." Ibid.

Thus, Matulewicz and Nowacki provide a basis for denying the admission of [the radiologist's] MRI report under the business records exception, because of the complexity of reading MRIs and diagnosing damage to the back and spine . . . . Indeed, in the present case three qualified physicians all read plaintiff's MRI in different ways, showing the nuanced difficulty inherent in interpreting such images. Additionally, as noted, admitting [the radiologist's] MRI report without calling him as a witness would deprive defendants of the ability to cross-examine the author of the report on the central issue of the case, namely plaintiff's herniation, in contravention of Nowacki. In those circumstances, [the radiologist's] MRI report was, on objection, inadmissible hearsay.

27                                            A-3543-13T2

> [*Brun*, *supra*, 390 *N.J. Super.* at 421-22
> (emphasis added) (certain citations
> omitted).]

In addition, we rejected plaintiff's argument in *Brun* that the absent radiologist's disputed findings could be presented to the jury under *Rule* 703 as "facts or data." We observed that:

> in *Day v. Lorenc*, 296 *N.J. Super.* 262, 267
> (App. Div. 1996), we held that while a
> physician could be questioned about the report
> of another doctor that he had taken into
> consideration in formulating his opinion,
> *N.J.R.E.* 705, the report of the non-testifying
> doctor could not itself be admitted in
> evidence "in the absence of an independent
> basis for admissibility." *Id.* at 267.
>
> . . . .
>
> While we conclude that [various cases
> cited by *Brun*] are all factually
> distinguishable from the present case, we
> believe that Nowacki which we have discussed
> earlier, is most on point in the circumstances
> presented here.
>
> It appears that [the chiropractor's]
> opinion on the plaintiff's injuries would have
> been substantially reliant on [the absent
> radiologist's] interpretation of the MRI
> films, which was the subject of considerable
> dispute. Allowing [the chiropractor] to
> testify as to the plaintiff's herniation would
> have been to permit the admission of the non-
> admissible hearsay of a non-testifying expert.
> This attempted circumvention of the Evidence
> Rules was properly denied by the trial judge.
> To repeat, this determination is not because
> the witness was a chiropractor. The same
> result would have obtained if the witness were

a medical doctor unqualified to interpret an
MRI.

[Brun, supra, 390 N.J. Super. at 423-24
(emphasis added) (citations omitted).]

More recently, the Supreme Court in Agha, supra, 198 N.J. at 50, applied similar restrictive principles in limiting the ability of a testifying expert to convey to a jury the complex and disputed opinions of a non-testifying radiologist. The plaintiff had been injured in a motor vehicle accident. Id. at 53. At trial, the central dispute was over whether his injuries vaulted the permanency requirement of the AICRA verbal threshold, and, in particular, whether the accident had caused him to sustain a herniated disc. Ibid. In the course of the plaintiff's care, an MRI study of his spine was conducted. Ibid. A radiologist who interpreted that MRI issued a report, stating that the MRI showed a herniated disc between the L5-S1 vertebrae. Ibid. The radiologist was not called as a witness at trial. Over defense counsel's objection, the trial court allowed plaintiff's two testifying experts, a chiropractor and an anesthesiologist, to refer in their testimony to the radiologist's finding of a herniated disc. Ibid. The trial court allowed those references to the radiologist's hearsay report under Rule 703, despite the fact that the chiropractor was not qualified to read MRI films,

and the anesthesiologist, although qualified to do so, had not reviewed the plaintiff's films himself.  Ibid.

The Court reaffirmed in Agha the core principle, which we also had quoted in Brun, supra, 390 N.J. Super. at 422-23, that "[a]lthough [Rule 703] permits a hearsay statement, such as a medical report by a non-testifying expert, to be referred to by a testifying expert for the purpose of apprising the jury of the basis for his opinion, it does not allow expert testimony to serve as 'a vehicle for the "wholesale [introduction] of otherwise inadmissible evidence."'"  Agha, supra, 198 N.J. at 63 (quoting State v. Vandeweaghe, 351 N.J. Super. 467, 480-81 (App. Div. 2002) (alteration in original) (citation omitted), aff'd, 177 N.J. 229 (2003)).

The Court elaborated that "[w]hen the purpose of [Rule 703] is taken into consideration, the only fair interpretation is that it was not intended as a conduit through which the jury may be provided the results of contested out-of-court expert reports."  Ibid.  Hence, "an expert may give the reasons for his opinion and the sources on which he relies, but that testimony does not establish the substance of the report of a non-testifying physician."  Id. at 64 (emphasis added).

The Court cited with approval our opinion in Brun, and our disapproval of improper "bootstrapping" of a non-testifying

expert's findings on complex and disputed matters.  Ibid.

Consistent with Brun, the Court declared it essential that the

testifying expert possess the credentials to interpret the MRI

films, and also that he or she have personally reviewed those

films.  Id. at 67.  As the Court instructed:

> Only a physician who was qualified by
> education or training to interpret the films
> and, in fact, did so, could have brought the
> herniation conclusion to the jury as a matter
> of substance. . . . [To permit otherwise over
> an adversary's objection] would violate the
> hearsay rules; contravene the standards
> governing expert testimony by allowing an
> expert to testify beyond his qualifications;
> and, most importantly, would defeat the cross-
> examination that is the bedrock of our
> adversary system.

> [Ibid.]

The Court further underscored in Agha the importance of a

limiting instruction to the jury in situations where a testifying

expert identifies or alludes to the sources upon which he or she

has professionally relied.  Such an instruction is necessary to

assure that the jurors do not improperly consider those outside

sources for their truth.  "[W]here an expert references the report

of a non-testifying expert to explain the basis of his or her own

opinion, it is incumbent upon the trial judge, upon request, to

instruct the jury regarding its limited use."  Id. at 63-64

(emphasis added) (citations omitted); see also N.J.R.E. 105

(authorizing limiting instructions). "Even in the absence of [such] a request, the judge should give a limiting instruction sua sponte where it is necessary to avoid an unjust result." Agha, supra, 198 N.J. at 63-64 n.7 (citations omitted).

## III.

We now apply these principles to the three events during this trial that are the subject of plaintiff's appeal: (1) the testimony by plaintiff's orthopedic expert, Dr. Zabinski, on direct examination, presented to the jury without objection, that his finding of a disc bulge was "consistent" with the finding in the report of Dr. Falciani, the non-testifying radiologist; (2) the disallowed attempt by plaintiff's counsel to cross-examine defendant's testifying orthopedic expert, Dr. Cristini, about the radiologist's contrary findings of a bulge; and (3) the disallowed attempt by plaintiff's counsel in summation to remind the jurors that his expert's findings of a bulge were consistent with those of Dr. Falciani.

In dealing with these three related episodes, the trial judge rightly was concerned about adhering to the strictures of Rules 703 and 808 and the applicable case law, including Agha, Brun and Nowacki. The judge concluded that in all three instances, plaintiff's counsel was attempting to convey to the jurors the substance of Dr. Falciani's out-of-court findings. Although we

32                                          A-3543-13T2

agree with the trial judge's perception of impropriety respecting the substantive misuse of Dr. Falciani's report, several additional considerations, some of them procedural in nature, need to be considered.

We begin the assessment by emphatically stating our agreement with the trial judge that it would have been improper for plaintiff's counsel to attempt to use either the testimony of Dr. Zabinski on direct examination, or the testimony of Dr. Cristini on cross-examination, as a conduit for the substantive admission of Dr. Falciani's hearsay opinion finding of a disc bulge. The conduit prohibition, which the Supreme Court strongly reaffirmed in Agha, cannot be circumvented in the guise of questions asking about the "consistency" or "inconsistency" of a testifying expert's own opinions with the hearsay opinions of an expert who does not testify at trial. Such circumvention destroys the clear objectives of the prohibition. Cf. State v. Frisby, 174 N.J. 583 (2002) (disallowing circumvention of the hearsay prohibition by asking a witness whether facts were "substantiated" by the hearsay declarants that he interviewed).

As a leading treatise on evidence law has observed, in the analogous context of the federal rules:

> While an expert may consider remote [i.e., out of court] statements that are not admitted and may be inadmissible, he cannot properly act

as a conduit by presenting an opinion that is not his own opinion but that of someone else, <u>and should not testify that others agree with him as a means of vouching for or reinforcing any opinion of his own that he presents, at least in relation to central or contested matters</u>. The purpose of [<u>F.R.E.</u>] 703 is to broaden the basis for expert opinion, but it is not enough that an expert repeats what he read or was told, even if he respects or trusts the people he read or listened to. The distinction between relying on others and repeating what others say can be made clearer as a formal matter by requiring the expert to say "what he thinks," not what "someone else thinks," and insisting on this formality is useful in weeding out cases where the expert has no independent view and being sure that the trier [of fact] gets the expert's own opinion.

[C. Mueller & L. Kirkpatrick, <u>Evidence</u> § 7.10 (4th ed. 2009) (emphasis added) (footnotes omitted).]

<u>See also</u> <u>Krohn v. N.J. Full Ins. Underwriters</u>, 316 <u>N.J. Super.</u> 477, 486 (App. Div. 1998), <u>certif. denied</u>, 158 <u>N.J.</u> 74 (1999) (observing that "[a]n expert witness should not be allowed to relate the opinions of a nontestifying expert merely because those opinions are congruent with the ones he has reached").[16]

To be sure, plaintiff's testifying orthopedist in this case, Dr. Zabinski, was indisputably qualified to review the CT scan,

---

[16] To the extent that our opinion in <u>Macaluso</u>, <u>supra</u>, 329 <u>N.J. Super.</u> at 355-56, might be read to allow such consistency testimony where a testifying expert has relied on the absent expert's findings on complex and contested matters, we disagree with that interpretation of the law.

and he properly asserted to the jury his own independent opinion that plaintiff had suffered a disc bulge as a result of the accident. That opinion was countered by the contrary opinion of the defense orthopedist, Dr. Cristini, who likewise was qualified to read the CT scan and did so as well, reaching a different conclusion.

The admissibility problem here stemmed from plaintiff's effort, in effect, to use the hearsay opinion of Dr. Falciani substantively as a "tie breaker," providing the jury with a third opinion on the hotly disputed subject. The radiologist's opinion was not subjected to cross-examination and the jury was not afforded a chance to observe his testimonial demeanor. Instead, the substance of his opinion was being slipped in through the proverbial "back door."

Moreover, Dr. Falciani's opinion finding a disc bulge at L4-L5 was sufficiently complex in nature to trigger the limitations of <u>Rule</u> 808. We have no reason to believe that the "motives, duties and interest[s]" of Dr. Falciani were anything other than benign. By all indications, his professional review of the MRI films was presumably undertaken solely for a patient's diagnosis and treatment, and not set forth with any contemplation of litigation on his part. We also do not question the "accuracy" of Dr. Falciani's opinions, other than to recognize, as we must,

that defendant's board-certified orthopedic expert disagreed with his findings. Even so, we agree with the trial judge that the disputed opinions of Dr. Falciani were sufficiently complex and controversial to require them to be excluded from the jury's substantive consideration.

With respect to plaintiff's direct examination of his own expert, Dr. Zabinski, it is clear that plaintiff asked Dr. Zabinski about the "consistency" of his findings with those of the radiologist for the purpose of having the jury, by these indirect means, to consider the substance of the radiologist's opinions "for their truth." The query, combined with the witness's affirmative response, triggered the third element of the basic definition of hearsay. See N.J.R.E. 801(c). In fact, this manner of inquiry is even more problematic because, through this shorthand means, the jury is fed what is essentially the "net opinion" of the non-testifying radiologist, without being informed of the "whys and wherefores" that support the radiologist's consistent finding. See Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014); Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011).[17]

---

[17] That said, we discern no problem under Rule 703 or Rule 808 with the testifying expert disclosing to the jury the bare fact that he considered the absent radiologist's report, and not delving

A procedural wrinkle here is that defense counsel did not object to the consistency question when it was posed at the de bene esse deposition. See Rule 4:14-9(f). Plaintiff asserts that he was surprised when the trial judge instructed the jury to disregard this testimony, and that he would have called Dr. Falciani (and, presumably would have paid Dr. Falciani the appropriate expert witness fee) had he known this portion of the recorded deposition was going to be excluded. However, plaintiff's Rule 4:25-7 submission[18] did not list Dr. Falciani as a trial witness, even provisionally.

Moreover, once he learned that the court was disallowing use of the consistency testimony, plaintiff did not seek an interim

---

into or hinting at the report's contents. Such limited testimony may aid in showing the thoroughness of the testifying expert's review of the matter. Likewise, there would be no prohibition against the testifying expert simply stating, without elaboration revealing or suggesting the contents of the hearsay report, that he or she "relied" on it as part of his or her review. However, going beyond that boundary, over opposing counsel's objection, is impermissible.

[18] Since the Rule 4:25-7 submissions are undated, we cannot tell whether they were exchanged before or after Dr. Zabinski's videotaped deposition. Even assuming, however, for sake of discussion, that plaintiff supplied his submission after Dr. Zabinski's deposition, he should not have assumed that the trial court would allow the substantive use of Dr. Falciani's hearsay findings in violation of the Rules of Evidence. The defense's Rule 4:25-7 submission also placed plaintiff on notice that it would oppose such substantive use at trial.

adjournment of the trial to attempt to secure Dr. Falciani's appearance or de bene esse deposition. Although we recognize that this was a one-day case and that the defense almost certainly would have opposed such a mid-trial request,[19] plaintiff's failure to even seek such potential relief weakens his present claim that the court's evidentiary ruling seriously undermined his trial strategy. Instead, it seems quite likely that plaintiff never intended to call Dr. Falciani, and that he simply expected to use the "consistency" and "inconsistency" queries of the testifying experts as an alternative (and less onerous) method of getting the radiologist's findings before the jury.

Plaintiff's attempted cross-examination of the defense expert, Dr. Cristini, about the radiologist's contrary findings involves a somewhat more nuanced hearsay analysis. To the extent the attempted cross was designed to get before the jury a second time the <u>substance</u> of Dr. Falciani's findings, that effort would similarly trigger the third element of the hearsay definition.

We are mindful that if the proffer for the cross were less ambitious, the testimony theoretically might not involve a

---

[19] We offer no views as to whether such a mid-trial request would have, or should have, been granted, recognizing that the defense would have especially resisted it if Dr. Falciani's discovery deposition had not been taken. Our point is simply that the plaintiff had the ability to seek such ad hoc relief from the court and bypassed the opportunity.

prohibited hearsay use under N.J.R.E. 801(c). In particular, if the sole limited purpose of this portion of the cross was to show that the defense expert's review of the patient's records was skewed or incomplete, such a line of inquiry arguably would amount to simply impeachment of the defense expert's credibility, an attack that does not hinge upon the actual truth of the absent declarant's statements.[20] Such impeachment to expose the weaknesses of an expert's testimony potentially might assist in the search for the truth, one of the recognized goals of our law of evidence. N.J.R.E. 102. See, e.g., State v. Basil, 202 N.J. 570, 591 (2010) ("Our legal system has long recognized that cross-examination is the 'greatest legal engine ever invented for the discovery of truth.'") (quoting Green, supra, 399 U.S. at 158, 90 S. Ct. at 1935, 26 L. Ed. 2d at 497 (citation and internal quotation marks omitted)).

---

[20] See, e.g., Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 672-74 (App. Div. 1993) (permitting defendant to cross-examine plaintiff's expert with facts concerning plaintiff's medical history to establish the "possibility" of an alternative medical cause of plaintiff's condition); see also Gaido v. Weiser, 227 N.J. Super. 175, 188-89 (App. Div. 1988), aff'd, 115 N.J. 310 (1989) (permitting counsel to cross-examine an expert witness, who had testified as to cause of a patient's death, as to whether her opinion would have been different had she considered additional facts). Although Allendorf and Gaido involved facts (which would be regulated under N.J.R.E. 703) rather than another expert's opinions (which would be regulated under N.J.R.E. 808), similar impeaching objectives would apply.

The probative significance of such impeachment arguably might be greater where, as here, the testifying expert has disregarded or discounted findings of a physician who is part of the patient's treatment team rather than findings of an expert physician only retained for litigation. The mere presence of a treating doctor's finding in a patient's medical file, irrespective of the actual soundness (or "truth") of that finding, could be viewed, at least in theory, as probative, comprising a form of notice to an expert who subsequently reviews that file. A plaintiff might plausibly want to argue that the defense expert should have been more cautious before reaching a contrary finding, having been made aware of what the treating doctor had found.

On the other hand, we have held, as a general if not immutable proposition, that "[i]t is improper to cross-examine a witness about inadmissible hearsay documents[21] upon which the expert has not relied in forming his opinion." Corcoran v. Sears Roebuck & Co., 312 N.J. Super. 117, 130 (App. Div. 1998) (citing State v.

---

[21] We must note that the hearsay concerns expressed in Corcoran do not bear upon the well-established practice of impeaching expert witnesses with learned treatises. In that particular context, the testifying expert need not have relied upon the treatise to be confronted with it on cross-examination, so long as it is otherwise established by another witness or by judicial notice to be a reliable authority. See N.J.R.E. 803(c)(18); see also Jacober v. St. Peter's Med. Ctr., 128 N.J. 475 (1992).

Pennington, 119 N.J. 547, 577-83 (1990), overruled on other grounds by State v. Brunson, 132 N.J. 377 (1993)); see also Villanueva v. Zimmer, 431 N.J. Super. 301, 320 (App. Div. 2013) (similarly recognizing that "generally" it is improper to engage in such cross-examination).

Here, Dr. Cristini did not rely on Dr. Falciani's radiology report, even though he repeated (albeit without commentary) the radiologist's finding of a bulge in his own first expert report. That said, we recognize that an expert's refusal to rely on or consider such identified material may, in and of itself, be some evidence of the expert's alleged bias or lack of thoroughness.

Theory aside, the probative value of such a line of impeachment must be carefully weighed against the very realistic potential for juror confusion, undue prejudice, and other countervailing considerations under N.J.R.E. 403. If the absent expert's opinions are not in evidence, there is a significant danger that the jurors will misuse that proof substantively in spite of a limiting instruction. We have serious doubts that most jurors in this particular context will be able to understand and follow an instruction that advises them to consider the absent radiologist's findings "only for impeachment, but not for their substance." The perils of such misuse are increased in closing arguments, as we envision that even counsel attempting to make

41

legitimate reference to the absent radiologist's findings as grounds for impeachment will be hard-pressed to do so without suggesting, at least by implication, that the jury should use the radiologist's findings for their truth as an expert tie-breaker.

Given these dangers of misuse, and also because the proffer of plaintiff's cross-examination of Dr. Cristini in this particular case was not limited to strictly non-substantive impeachment, we conclude that Rule 403 bars the attempted cross-examination of Dr. Cristini.

The defense expert was asked by opposing counsel what he "learn[ed]" from the "results" of the CT scan, a query plainly designed to get before the jury the substance of Dr. Falciani's opinions. The questions, and the responses that they sought — inevitably delving into the substance of the CT study — was improper because any hypothetical probative value it may have had for impeachment was "substantially outweighed" by the risks of unfair prejudice and juror confusion. N.J.R.E. 403.[22]

---

[22] See, e.g., Hill v. Newman, 126 N.J. Super. 557, 563 (App. Div. 1973), certif. denied, 64 N.J. 508 (1974) (barring the admission of a document containing hearsay and stating that, despite the availability of a limiting instruction under the Rules, "a trial judge can still exclude evidence [under N.J.R.E. 403] which may have limited admissibility value if he feels that a cautionary or limiting instruction will not neutralize the prejudice engendered by such evidence"); State v. Collier, 316 N.J. Super. 181, 197 (App. Div. 1998), aff'd o.b., 162 N.J. 27 (1999) (noting that the

Although we do not categorically rule out in all cases the strictly-impeachment use of a treating expert's contrary hearsay findings during the cross-examination of a testifying expert, we agree that the cross-examination here improperly sought to elicit the contents of Dr. Falciani's opinions for their truth. Indeed, it is well settled that "[t]he law places limits on cross-examination for reasons of both practicality and logic." State v. Silva, 131 N.J. 438, 444 (1992), aff'd, 131 N.J. 438 (1993); see also 1 McCormick on Evidence § 49 (Strong ed., 4th ed. 1992) (noting that considerations of "confusion of the issues, misleading the jury, undue consumption of time, and unfair prejudice" may justify restricting a cross-examination that attempts to impeach a witness with extrinsic evidence).

We lastly consider plaintiff's counsel's attempt to argue the consistency point in his summation. To be sure, the objection from defense counsel to this point should have come sooner, ideally at Dr. Zabinski's deposition. Nonetheless, the trial court

---

admission of certain "other-crimes evidence, as admitted, was too prejudicial to be subject to cure by any limiting instruction"); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, supra, cmt. 1 on N.J.R.E. 105 ("There may be situations, [] where, no matter how prompt, direct and forceful the instructions to the jury, the amount of prejudice engendered by testimony or other evidence is incapable of amelioration by a cautionary, curative or limiting instruction.").

reasonably acted with vigilance in assuring that the jury was not asked by plaintiff's counsel to consider the hearsay evidence in a substantive manner, and thereby risk a tainted verdict. See Kotler v. Nat'l R.R. Passenger Corp., 402 N.J. Super. 372, 380-81 (App. Div. 2008) (vacating a verdict and remanding for a new trial where inadmissible evidence had been presented and counsel "compounded" the erroneous admission by referring to it in closing arguments).

On the whole, the trial judge acted within his discretion in his sound application of the laws of evidence, as well as his corresponding cautionary instructions to the jury and the limitations he imposed on closing arguments. Bender v. Adelson, 187 N.J. 411, 433-34 (2006).

## IV.

The judgment for defendant is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION