**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1761-22

STATE OF NEW JERSEY, by the
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

     Plaintiff-Appellant,

v.

1.581-ACRES OF LAND IN THE
BOROUGH OF POINT PLEASANT
BEACH, OCEAN COUNTY, NEW
JERSEY, and BAY POINTE DUNES
HOMEOWNERS ASSOCIATION,
INC., a New Jersey Corporation, Fee
Owner,

     Defendants-Respondents.

_____

Submitted October 9, 2024 – Decided November 4, 2024

Before Judges Mayer, Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2898-17.

Rutter & Roy, LLP, attorneys for appellant (Brian W. Keatts, on the briefs).

Bathgate, Wegener & Wolf, attorneys for respondent Bay Point Dunes Homeowners Association, Inc. (Peter H. Wegener, on the brief).

PER CURIAM

Plaintiff New Jersey Department of Environmental Protection (Department) appeals from a September 27, 2022 jury verdict awarding $964,000 to defendant Bay Pointe Dunes Homeowners Association, Inc. (Bay Pointe) as just compensation for the Department's taking of 1.581 acres of beachfront property owned by Bay Pointe (Property). The Department also appeals from a January 4, 2023 order denying its motion for a new trial or, alternatively, remittitur. We affirm both orders on appeal.

We recite the facts from the trial record. Bay Pointe owns property in Point Pleasant Beach, known as Lots 2, 3, and 4 in Block 179.04. The Department sought to construct a dune and berm system to protect coastal communities from storm damage (Project). To complete the Project, the Department required a Storm Damage Reduction Easement (SDRE) across the Property.

The Department exercised the power of eminent domain and filed a condemnation action to acquire the Property to complete the Project. The parties

agreed the valuation date for the Department's taking of the Property was October 16, 2017.

As of the taking date, there were no structures on the Property. The parties acknowledged the Property was once a privately owned beach. However, the Department used federal funds for the Project, the parties acknowledged the Property allowed unrestricted beach accessible to the general public.

The Project included construction of a twenty-two-foot dune and extension of existing berms. According to the Department, the Project would create 42,000 square feet of additional beach area.[1] Further, under the Project, the Department would renourish the area, if needed, every four years at no cost to Bay Pointe.

Because the parties did not agree on the amount of compensation due Bay Pointe as a result of the Department's taking of the Property, the matter was scheduled for a trial. Prior to trial, the parties exchanged expert appraisal reports proffering divergent opinions regarding the value, or "just compensation," to be paid to Bay Pointe. In anticipation of trial, the Department retained Donald

---

[1] The Department proffered evidence that the Property's usable beach area would increase by thirty-eight percent upon the Project's completion.

Moliver, Ph.D., as its expert appraiser and Bay Pointe retained Robert Gagliano as its expert appraiser.

Prior to trial, the Department moved in limine to preclude Gagliano's use of an "Easement Impact Chart" (Chart). In partially granting the Department's motion, the judge prohibited Gagliano from referring to any outside expert resources in generating the Chart. Further, the judge allowed Gagliano to use the Chart so long as Gagliano did not mention the name of the Chart's original creator or the creator's article explaining the purpose of the Chart. The judge also permitted Gagliano to tell the jury the Chart reflected his methodology in arriving at an award of just compensation.

The jury heard testimony from September 20, 2022 through September 27, 2022. In addition to the expert appraisal testimony, the jury heard testimony from Dr. Stewart Farrell, the Department's expert in marine science and coastal research. Dr. Farrell described the benefits to be conferred on the Property as a result of the Project. Specifically, Dr. Farrell explained the Project's enhanced storm damage protection for the area.

The Department also presented testimony from Keith Watson, who worked at the United States Army Corps of Engineers and managed the Project. Watson testified the SDRE required public access to the Property based on the

use of federal funds to complete the Project. Watson agreed the SDRE was a "perpetual and assignable easement . . . to . . . operate, maintain, . . . and replace a public beach." Watson told the jury the "perpetual" language meant the Property was "subject to public use and access in perpetuity."

The Department also offered testimony from William Dixon, who was the director of the Department's Division of Coastal Engineering. Dixon explained the SDRE allowed Bay Pointe to operate the beach subject to the right of public access. According to Dixon, Bay Pointe could not profit from any fees collected for the public's use of the Property.

In support of its valuation for the Property, the Department presented Moliver's appraisal testimony. Moliver admitted the Property's only reasonable use after the Department's taking was as a public beach, and the Property lacked any economic use "on a commercial basis." Further, before the taking, Moliver agreed Bay Pointe "could always sell the [P]roperty for a private use." According to Moliver, the Property's market value prior to the taking was $880,000, and its market value after the taking, with mitigation,[2] was $923,700.

_____

[2] In his appraisal report, Moliver explained mitigation "consider[ed] the added benefit of the expanded beach area that [would] be constructed as part of the Project and a Tidelands license that the owner may obtain from the [S]tate to use the new beach area for its operation."

Using these values, Moliver concluded $6,300 represented just compensation for the Property.

In support of its valuation for the Property, Bay Pointe presented Gagliano's testimony. In arriving at his calculation of just compensation, Gagliano prepared an appraisal report and Chart.[3] According to Gagliano, the Property lost ninety-five percent of its value as a result of the Project. Specifically, Gagliano testified the market value of the Property before the taking was $1,530,000, and the market value after the taking was $80,000. Thus, he calculated $1,450,000 as just compensation for the Department's taking of the Property.

After considering the testimony, reviewing the documentary evidence, and hearing the judge's instructions, the jury awarded the sum of $964,000 to Bay Pointe representing just compensation for the Property.

Three weeks later, the Department filed a motion for a new trial or, alternatively, remittitur. In a January 4, 2023 order, the judge denied the motion in its entirety.

The Department appeals from the jury's awarding $964,000 as just compensation for its taking of the Property. Specifically, the Department argues

---

[3] The Chart was the subject of the Department's in limine motion.

the judge used a confusing jury verdict sheet and provided flawed jury instructions. It further contends the judge made incorrect evidentiary rulings during the trial. The Department also asserts comments by Bay Pointe's counsel during summation were improper and inflammatory. Based on these asserted trial missteps, the Department contends the judge erred in denying its motion for a new trial or remittitur. We reject these arguments.

## I.

The Department first asserts the judge abused his discretion in allowing Gagliano to use the Chart as part of his testimony. It argues the Chart should have been excluded under N.J.R.E. 808 and James v. Ruiz, 440 N.J. Super. 45 (App. Div. 2015), because the Chart "was taken from a prior article by a well-known appraiser, Donnie Sherwood," who did not testify at trial.

The Department claimed Bay Pointe's counsel "inflict[ed] extreme prejudice on the Department when he told the jury, repeatedly, that . . . Gagliano's 'Easement Impact' [C]hart was utilized by other appraisers." The Department noted Bay Pointe's counsel "told the jury that [the] [C]hart, used by other appraisers, supported . . . Gagliano's methodology–and that the other appraisers' opinions were 'consistent' with . . . Gagliano's."

In denying the new trial motion on this issue, the judge found the Department's reliance on James was misplaced. As the judge explained, James precluded a testifying expert from discussing the findings or opinions of a non-testifying expert to bolster the testifying witness' credibility. The judge, relying on his in limine ruling, stated he "act[ed] in an abundance of caution because . . . Bay Pointe[] was not seeking to bootstrap any opinion per se of that non-testifying expert on the ultimate issue. [The Chart] was a part of the methodology used by [Gagliano]."

We cite the well-settled law governing our review of a trial judge's disposition on a motion for a new trial. "The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011)). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Ibid., (quoting Risko, 206 N.J. at 521).

A-1761-22

A "jury verdict is entitled to considerable deference." Risko, 206 N.J. at 521. "On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). In reviewing a decision on a motion for a new trial, we give "due regard to the opportunity of the jury to pass upon the credibility of the witnesses," R. 4:49-1(a), and "'due deference' to the trial court's 'feel of the case,'" Risko, 206 N.J. at 522 (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)).

Additionally, we accord substantial deference to a trial judge's evidentiary rulings. State v. Morton, 155 N.J. 383, 453 (1998). We review a trial judge's evidentiary rulings, including rulings on the admissibility of expert testimony, for abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011). An abuse of discretion arises when a "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." United States by U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "[W]e will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice

9

resulted.'" Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

Here, the judge granted the Department's in limine motion and prohibited both appraisal experts from referencing any specific outside sources and limited the experts to stating that appraisers may consider outside resources. As the judge explained, "appraisers . . . rely on outside sources to help them make their determinations. They just can't . . . reference that study or the author by name or try[] to bootstrap that opinion to bolster their own." The judge noted he allowed Gagliano to adopt the Chart as his own and inform the jury he used the Chart to arrive at the amount of just compensation provided Gagliano did not mention the Chart's source. While the judge submitted Gagliano "may be guilty of plagiarizing" by adopting the Chart as his own, the judge concluded Gagliano's adoption of the Chart without referencing the source of the Chart did not run afoul of our decision in James.

Consistent with the judge's in limine ruling, Gagliano did not mention Sherwood or refer to Sherwood's article during his trial testimony. Gagliano told the jury that he used the Chart as a "tool" to arrive at a value for the Property. Specifically, Gagliano relied on the Chart to explain the impact of the SDRE on Bay Pointe's ability to use the remaining Property after the taking. He also stated

appraisers used charts as a common method of valuing easements. Based on the foregoing, the jury had no reason to disbelieve Gagliano's Chart was his own. Thus, Bay Pointe did not violate the judge's in limine ruling warranting a new trial.

Moreover, we agree with the judge that the Department's reliance on N.J.R.E. 808 and James is misplaced. Neither N.J.R.E. 808 nor James precluded Gagliano's use of the Chart.

N.J.R.E. 808 provides:

> Expert opinion that is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the court finds that the circumstances involved in rendering the opinion tend to establish its trustworthiness. Factors to consider include the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion.

Because Gagliano's expert report and Chart did not refer to Sherwood or Sherwood's opinions, the jury did not hear any information proffered by a declarant who was not a testifying witness at trial. Therefore, the judge's in limine ruling comported with N.J.R.E. 808.

Nor are the facts in this case similar to those in James. In James, a party attempted to introduce through the "back door" the opinion of a non-testifying

expert. 440 N.J. Super. at 72. We held a "testifying expert may not serve as an improper conduit for substantive declarations (whether they be objective or subjective in nature) by a non-testifying expert source." Id. at 66.

Here, Gagliano did not testify as to another expert's opinion regarding the value of the Property. In reviewing the trial transcripts, Gagliano never referred to Sherwood, Sherwood's chart, or Sherwood's article. Consistent with the judge's in limine ruling, the jury heard only that Gagliano had experience as a real estate appraiser and used the Chart as a tool to aid jurors in understanding how he arrived at his valuation opinion. On this record, the judge's admission of Gagliano's Chart did not result in a miscarriage of justice warranting a new trial.

## II.

We next consider the Department's argument that the jury verdict sheet was confusing and prejudicial warranting a new trial. We disagree.

The Department argues the verdict sheet improperly asked the jurors to perform additional calculations to arrive at the amount of just compensation. The Department also asserts the form of the jury verdict sheet had not been used in other condemnation actions in Ocean County. The Department claims the verdict sheet should have been limited to one or three inquiries: the amount of

just compensation, or the market value of the Property before taking, the market value of the Property after the taking, and the amount of just compensation.

In rejecting the Department's new trial motion on this issue, the judge concluded the jury verdict sheet was not confusing or prejudicial. The judge explained the jury verdict sheet mirrored the verdict sheet used in Borough of Harvey Cedars v. Karan, 214 N.J. 384 (2013). In following the Court's decision in Karan, the judge noted the jury in this case had to "consider and discount . . . the value of the benefit that was being bestowed by the State on the land[]owner to the [P]roperty in question."

Unlike most condemnation matters, where there is no benefit to the property owner after the taking, Bay Pointe benefitted from the Project. Based on Bay Pointe's receipt of a benefit after the taking, the judge concluded verdict sheets used in traditional condemnation actions were not suited to the facts in this matter. Further, the judge stated he reviewed the verdict sheet with the jury before their deliberations and "there was no indication from the jury that they did not understand what their task was before them or in the verdict sheet specifically."

"Because a verdict sheet constitutes part of the trial court's direction to the jury, defects in the verdict sheet are reviewed on appeal under the same 'unjust

result' standard of Rule 2:10-2 that governs errors in the jury charge."  State v. Galicia, 210 N.J. 364, 388 (2012).  However, "[w]hen there is an error in a verdict sheet, but the trial court's charge has clarified the legal standard for the jury to follow, the error may be deemed harmless."  Id. at 387.

"In examining whether mistakes made in jury instructions require intervention, a court must determine whether the charge, 'considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'"  Maleki v. Atlantic Gastroenterology Assocs., P.A. 407 N.J. Super. 123, 128 (App. Div. 2009) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).  "This same approach is taken with regard to mistakes in a jury verdict sheet."  Ibid. (citing Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 467-68 (2000)).

Similar to the facts in this case, the Karan jury had to determine the value of a partial taking of land for the purpose of constructing a dune for storm protection.  214 N.J. at 388.  In arriving at just compensation for a public project based on a partial taking of property, the Karan Court held a jury must consider any benefit received by the property owner after the taking.  Id. at 389. Specifically, the Court stated:

> [W]hen a public project requires the partial taking of property, "just compensation" to the owner must be

based on a consideration of all relevant, reasonably calculable, and non-conjectural factors that either decrease or increase the value of the remaining property. In a partial-takings case, homeowners are entitled to the fair market value of their loss, not to a windfall, not to a pay out that disregards the home's enhanced value resulting from a public project. To calculate that loss, we must look to the difference between the fair market value of the property before the partial taking and after the taking. In determining damages, the trial court did not permit the jury to consider that the dune would likely spare the Karans' home from total destruction in certain fierce storms and from other damage in lesser storms. A formula—as used by the trial court and Appellate Division—that does not permit consideration of the quantifiable benefits of a public project that increase the value of the remaining property in a partial-takings case will lead to a compensation award that does not reflect the owner's true loss. Compensation in a partial-takings case must be "just" to both the landowner and the public. United States v. Commodities Trading Corp., 339 U.S. 121, 123 . . . (1950). A fair market value approach best achieves that goal.

[Ibid.]

Here, the verdict sheet asked the jury to answer the following interrogatories:

A) What was the market value of the subject property before the taking?

. . . .

B) What is the market value of the property interest taken by the State of New Jersey?

15                                                    A-1761-22

. . . .

C) What is the market value of the benefit to the remaining property interest?

. . . .

D) What is the market value of the subject property after the taking?

. . . .

E) What is the amount of just compensation to be paid to the property owner?

The Department objected to the verdict sheet because it differed from verdict sheets used in other Ocean County condemnation cases. Because the Department objected, we review for harmless error. Under that standard, we may reverse if we find "a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (alteration in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

Having reviewed the record as a whole, including the judge's instructions to the jury, we are satisfied the judge did not err in submitting the verdict sheet to the jury as worded. The judge explained the jury had to value the interest

16

taken and then offset that value by any benefits bestowed on the Property to arrive at a just compensation value.

Here, the verdict sheet amply explained the jury's task for calculating the value of the Property taken and offsetting that value by any benefit conferred on the Property as a result of the taking. While the jury heard "wildly varying views" from the valuation experts, we discern no error in the jury's performance of the required calculations reflected in the jury verdict sheet to arrive at an award of just compensation based on the evidence.

Additionally, we are satisfied the jury verdict sheet was not confusing or prejudicial. The verdict sheet asked the jurors to determine "the market value of the property interest taken by the State of New Jersey" and "the market value of the benefit to the remaining property interest." Those were the exact calculations the jury undertook to determine the amount of just compensation.

Further, the Department's contention that the jury was confused by the wording in the verdict sheet is speculative. After considering the experts' testimony, the jurors unanimously determined the market value of the Property before the taking was $1,205,000–an amount exactly in between Gagliano's appraisal value of $1,530,000 and Moliver's appraisal value of $880,000.

17

Based on the trial testimony, the jurors then determined the market value of the Property interest taken by the Department was $1,084,500–which represented ninety percent of the market value of the Property before the taking.

Consistent with the jury verdict sheet and the judge's instructions, the jury next determined the market value of the benefit conferred to Bay Pointe's remaining Property interest after the partial taking. The jury arrived at a benefit value of $120,500, which represented ten percent of the Property's market value before the taking.

Next, the jurors determined the market value of the Property after the taking was $241,000, which, as the verdict sheet instructed, was calculated by using the market value of the Property before the taking, subtracting the market value of the Property interest taken by the Department, and then adding the market value of the benefit to the remaining Property interest: $1,205,000 - $1,084,500 + $120,500 = $241,000.

After performing these calculations, the jurors arrived at a value for just compensation. Consistent with the verdict sheet and judge's jury instructions, the jury took the market value of the Property before the taking and subtracted the market value of the Property after the taking ($1,205,000 - $241,000) and determined $964,000 represented just compensation.

18

On this record, we are satisfied the verdict sheet was straightforward, and the jury evinced no confusion regarding its task. The jurors did as the verdict sheet instructed to determine the award of just compensation. By showing their mathematical calculations, the jurors clearly understood the calculations they were required to perform and correctly determined the amount of just compensation. Because the jury verdict sheet was neither confusing nor prejudicial, the judge properly denied the Department's motion for a new trial.

III.

We next consider the Department's argument that the judge's jury instructions were flawed and warranted a new trial. The Department claims the judge erred in adopting a new jury charge, not based on the model jury charge, by including a definition of "easement." The Department also argues the judge erred by declining to include the Department's requested supplemental charge language. Again, we disagree.

The Department claimed the jury instructions proposed by the judge were never used in any other condemnation cases and, therefore, were improper. In response, the judge noted there were no model jury instructions concerning a partial taking of property resulting in the extremely limited use of the remaining property, as in this case.

19

Regarding the Department's objection to defining the term "easement" in the jury instruction, the judge explained, "the instruction that was given to the jury was sound and in accordance with the law."

The judge further stated both parties presented suggested supplemental jury instructions to be included as part of the charge, and he made the final determination whether to accept or reject the parties' suggestions. The judge concluded there were no "errors in . . . the instructions that were given to the jury." Thus, the judge rejected the Department's argument that the jury charge was flawed and warranted a new trial.

We review a trial court's jury instructions de novo. Fowler v. Akzo Nobel Chems., Inc., 251 N.J. 300, 323 (2022). Appropriate and proper jury instructions are essential for a fair trial. Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 256 (2015). "Nonetheless, not every improper jury charge warrants reversal and a new trial." Id. at 257.

A jury charge must be read as a whole, not just the challenged portions, to determine its overall effect. Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002). "There is no reversible error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even

A-1761-22

though part of the charge, standing alone, might be incorrect.'" Mogull, 162 N.J. at 464 (quoting Fischer, 143 N.J. at 235).

## A. Easement Instruction

The Department claims the judge's easement instruction was unclear and prejudicial. The judge gave the following instruction to the jury: "An easement constitutes an interest in the land, and the owner must be compensated for the value of the easement taken from it." The Department argues the jury charge used in a different condemnation case involving a beach club in Ocean County lacked any similar language and, therefore, the charge in this case was improper.

During the colloquy with counsel regarding the proposed easement instruction, the judge asked the Department, "[W]hat is it that's objectionable? [I]t's black letter law as to what an easement is. I don't see anything objectionable in it." The Department's attorney responded that including the definition of an easement could "lead[] to a double recovery" and suggested the jury might award separate money for an easement in addition to just compensation for the partial taking. Ultimately, the judge declined to alter the easement language in the jury charge because he determined the language reflected Moliver's testimony during the trial. The judge agreed with defense

counsel that the easement language in the jury charge was "clearly the evidence in the case and [was] clearly the law."

Having reviewed the jury charge as a whole, we are satisfied the Department's concerns regarding the jury charge were unfounded. The easement language in the judge's recitation of the jury instruction was consistent with case law and the evidence presented during the trial. Moreover, upon reviewing the jury instructions and the jury verdict sheet, the easement instruction did not lead the jury to award a double recovery or impermissibly compound the awarded damages.

B.    The Department's Proposed Supplemental Jury Instructions

The Department further contends the judge erred in rejecting its proposed supplemental jury charges. The Department's proposed supplemental charges included language taken from United States Supreme Court and New Jersey cases. The Department argued its "supplemental charges were simply statements of law that should have been included, and the Department was prejudiced by their absence," warranting a new trial.

In reviewing the requested supplemental jury instructions, the judge denied both parties' proposed charges. The judge concluded the parties' language was "surplusage and . . . defined in the charge as presently constituted

in terms of market value, just compensation.  So . . . it's . . . saying the same thing a different way."

Having reviewed the transcript of the charge conference and the jury instructions provided by the judge, we are satisfied the charge, read as a whole, was clear, accurate, and fairly set forth the controlling principles of law.  Thus, the judge did not abuse his discretion in denying the parties' proposed supplemental jury instructions.  We discern no error in the judge's jury instructions capable of producing an unjust result or prejudicing the Department so as to warrant a new trial.

IV.

The Department next argues the judge erred in admitting in evidence Exhibit D-9A, a one-page excerpt from the SDRE.  We decline to address the Department's argument on this point because it failed to adequately brief the issue or cite any supporting legal authority.  See Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990) ("The failure to adequately brief the issues requires [the claim] to be dismissed as waived.").  See also State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (stating the "absence of any reference to the law" in a brief "suggests a like paucity of authority helpful to the party.").

Even if we were to consider the Department's arguments on this point, we review a judge's evidentiary rulings for abuse of discretion.  See Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010).  We will uphold a trial court's evidentiary rulings absent a clear error in judgment or rulings so wide of the mark they result in a manifest denial of justice.  See Hrymoc v. Ethicon, Inc., 254 N.J. 446, 463 (2023).

We discern no abuse of discretion in the judge's decision to admit both the entire SDRE as reflected in Exhibit D-9 and the excerpt from the SDRE as reflected in Exhibit D-9A.  In requesting the admission of Exhibit D-9A as evidence, defense counsel simply sought to highlight the provision in the SDRE relevant to the issue in this case.  Thus, we discern nothing improper in the judge's evidentiary ruling allowing Exhibit D-9A to be admitted as evidence.

V.

The Department next argues Bay Pointe's counsel made improper references during closing argument.  Specifically, the Department argues defense counsel's references to Supreme Court and other court decisions were prejudicial and resulted in a miscarriage of justice requiring a new trial.  Again, we decline to address the Department's arguments on this point because the

24

Department failed to adequately brief the issue and provided no legal authority in support of its argument.

Even if we were to consider the Department's arguments on this issue, the references by Bay Pointe's counsel to case law during summation were simply legal arguments. The judge instructed the jury that comments by counsel during summation were not evidence. The jury is presumed to have understood and followed that instruction. State v. Gandhi, 201 N.J. 161, 197 (2010).

Based on the judge's express instruction to the jury that statements by counsel during summation were not evidence, we are satisfied the judge properly denied the Department's request for a new trial based on defense counsel's citation to case law during summation.

## VI.

We next consider the Department's contention that Bay Pointe's attorney made misleading and inflammatory comments during summation warranting a new trial. The Department asserts defense counsel disparaged the government and distorted the facts and evidence during closing argument. We disagree.

"As a general matter, 'counsel is allowed broad latitude in summation [and] counsel may draw conclusions even if the inferences that the jury is asked to make are improbable, perhaps illogical, erroneous or even absurd.'" Bender

v. Adelson, 187 N.J. 411, 431 (2006) (alteration in original) (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). However, "[s]ummation commentary . . . must be based in truth, and counsel may not 'misstate the evidence nor distort the factual picture.'" Ibid. If comments during summation stray from these limits and are so prejudicial as to clearly and convincingly constitute a miscarriage of justice under the law, the court shall grant a new trial motion. Ibid.

A trial court "has broad discretion in the conduct of the trial, including the scope of counsel's summation." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 392 (2009). We apply an abuse of discretion standard to a judge's ruling related to summations. Id. at 392-93. "An appellate court, however, may view counsel's failure to object to summation remarks as 'speaking volumes about the accuracy of what was said.'" Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 128 (2008) (quoting Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 495 (2001)).

Here, the Department failed to object to comments made by Bay Pointe's attorney during closing argument. When opposing counsel fails to object to alleged improper comments during summation, we review those remarks under the plain error standard. R. 2:10-2. An unchallenged error constitutes plain

error if it was "of such a nature as to have been clearly capable of producing an unjust result." Ibid.

We discern no error, let alone plain error, warranting a new trial based on defense counsel's comments during summation. Defense counsel's summation represented fair comment on the trial evidence. In reviewing the transcript of the closing arguments, we note Bay Pointe's attorney focused on the conflicting valuation opinions of the appraisal experts. Nothing in defense counsel's closing constituted plain error clearly capable of leading to an unjust result.

Additionally, the judge instructed the jury that defense counsel served as an advocate for his client, and statements by counsel during summation did not constitute evidence. Again, nothing in the record suggests the jury failed to understand and follow the judge's instruction on this point. Therefore, the judge properly denied the Department's motion for a new trial based on defense counsel's comments during summation.

VII.

We next address the Department's argument that cumulative errors during the course of the trial warranted a new trial. "[E]ven when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to

require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008). "Where the aggregation of legal errors renders a trial unfair, a new trial is required." State v. T.J.M., 220 N.J. 220, 238 (2015). However, this principle does not apply "where no error was prejudicial and the trial was fair." Ibid. (quoting State v. Weaver, 219 N.J. 131, 155 (2014)).

The judge rejected the Department's cumulative error argument in support of the new trial motion. The judge explained the parties "both received a fair trial and that there were no errors . . . leading to a result that shocked the conscience of the [c]ourt."

Having rejected the Department's arguments on appeal regarding the alleged trial errors, we reject its cumulative error argument. We are satisfied there were no trial errors, and the Department received a fair trial.

## VIII.

Because we reject the Department's arguments related to the judge's denial of its motion for a new trial, we consider the Department's alternative argument that the judge erred in declining to remit the amount awarded by the jury. We disagree.

"Judicial review of the correctness of a jury's damages award requires that the trial record be viewed in the light most favorable to plaintiffs." Cuevas v.

A-1761-22

, 226 N.J. 480, 488 (2016). "The standard for reviewing a damages award that is claimed to be excessive is the same for trial and appellate courts, with one exception—an appellate court must pay some deference to a trial judge's 'feel of the case.'" Id. at 501 (quoting Johnson v. Scaccetti, 192 N.J. 256, 282 (2007)). As our Supreme Court held in Orientale v. Jennings, "[I]n the unusual case where a damages award was grossly excessive or grossly inadequate, the trial court retains the power to declare that a jury's damages award shocks the conscience and to grant a new trial or offer the parties a remittitur or an additur." 239 N.J. 569, 593 (2019). The Court explained, "When a judge declares that a jury's damages award is so grossly excessive or grossly inadequate 'that it shocks the judicial conscience,' see Cuevas, 226 N.J. at 485, the jury's appraisal of the evidence leading to an erroneous verdict should not be entitled to any deference," ibid.

After denying the Department's new trial motion, the judge addressed the request for remittitur. The judge stated his reasons for rejecting the Department's remittitur request in his January 4, 2023 decision placed on the record. The judge explained:

> [V]erdicts can vary greatly with regard to [the] evaluation of the evidence and coming up with a before- and-after value. And after taking into account the benefit that was bestowed by the State on the

> construction of the dune, the $964,000 jury award was within, I think, reason. It certainly was closer to what . . . [Bay Pointe] believed that . . . fair market . . . value was, and . . . I don't believe that it at all shocks the conscience because it was in compliance -- or that [the jury] for whatever reason chose to in this case . . . put more credence in the methodology that was used by [Bay Pointe]'s expert as opposed to that of the State, and made its determination. And . . . I find that whether I agree with that decision, that verdict, or not, it certainly is in conformance with the evidence as presented during the course of the trial.

In this case, the jury had to determine just compensation for the Department's taking of the Property. In resolving that issue, the jury considered the conflicting testimony of the parties' experts. The assessment of expert testimony is uniquely within the province of the jury. State v. Vandeweaghe, 177 N.J. 229, 239 (2003). A jury is not bound by the testimony of an expert witness. State v. M.J.K, 369 N.J. Super. 532, 549 (App. Div. 2004). A jury may accept portions of an expert's testimony and reject other portions. Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993).

In this matter, the jury heard the experts' testimony, weighed that testimony along with the testimony of the other trial witnesses, considered the documentary evidence, and rendered an award. Based on our review of the record, we are satisfied the jury credited the testimony of Bay Pointe's expert appraiser over the testimony proffered by the Department's expert appraiser to

render its award. The amount awarded by the jury did not shock the judicial conscience. Thus, on this record, remittitur was unnecessary and unwarranted.

After carefully reviewing the entire record, we are satisfied the jury's award of just compensation did not constitute a manifest denial of justice under the law. The jury's awarded amount was supported by sufficient credible evidence in the record. We discern no reason to disturb the verdict or the judge's denial of the Department's motion for a new trial or, alternatively, remittitur.

To the extent we have not addressed any arguments raised by the Department, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31

A-1761-22